545 So.2d 123 (1988)
Larry AVERY
v.
STATE.
5 Div. 348.
Court of Criminal Appeals of Alabama.
March 22, 1988.
On Return to Remand December 30, 1988.
Rehearing Denied February 24, 1989.
Certiorari Denied May 19, 1989.
*124 Greg Ward, Lanett, for appellant.
Don Siegelman, Atty. Gen., and Charles W. Hart III, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 88-671.
PATTERSON, Judge.
The appellant, Larry Avery, was indicted and convicted for committing the offense of theft of property in the first degree. He was sentenced, as a habitual offender, to life imprisonment.
Avery, a black male, contends that, in exercising its peremptory jury strikes, the prosecution was motivated by racial bias, and that consequently he is entitled to a *125 new trial under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The record establishes that the prosecution used 12 strikes to strike 12 blacks on the venire and that no black sat on the jury. The record also reflects an explanation by the prosecution for each of its strikes against a black venireperson.
In reviewing the reasons given by the prosecution, the trial court did not have the benefit of the guiding principles of Branch v. State, 526 So.2d 609 (Ala.1987) (as modified on rehearing, December 4, 1987), for the trial occurred prior to our supreme court's decision in Branch. While this court is not automatically required to remand for additional consideration under the guidelines of Branch, where the trial court has already conducted a Batson hearing, e.g., Shelton v. State, 521 So.2d 1035 (Ala.Cr.App.1987), cert. denied, 521 So.2d 1038 (Ala.1988), we find that the instant circumstances warrant additional consideration under the Branch guidelines. See Scales v. State, 539 So.2d 1069, 1073 (Ala. Cr.App.1988) (Bowen, P.J., dissenting). Several of the prosecution's explanations appear to be somewhat tenuous, being based on such intangibles as "body language," "negative attitude," and "demeanor." These explanations require close scrutiny. Branch, 526 So.2d at 629, n. 16. Moreover, "intuitive judgment or suspicion by the prosecutor is insufficient to rebut the presumption of discrimination." Id. at 623 (citing Batson, 476 U.S. at 97, 106 S.Ct. at 1723). In addition, several strikes were based on "age." The Branch court considers these to be basically "group-based" strikes. Id. at 626, n. 13. Thus, we find that the prosecution's explanations should be reviewed in the context of the entire jury selection proceedings and, particularly, the prosecution's exercise of all its strikes.
Accordingly, we remand the cause with directions for the trial court to review again the proceedings conducted before it, using the guidelines of Batson and Branch. In carrying out this responsibility, the court may or may not conduct an additional hearing. The court is to file findings of fact and conclusions of law with this court.
REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
PATTERSON, Judge.

I.
This case was remanded to the trial court with instruction to review its proceedings concerning the selection of the jury, in the light of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and the guidelines of Ex parte Branch, 526 So.2d 609 (Ala.1987). We left the decision as to whether an additional hearing should be held to the discretion of the trial court, and the trial court chose not to hold such a hearing. The trial court reconsidered its denial of appellant's motion to quash the jury panel for the state's alleged racial discrimination in the selection of the jury and, finding no evidence of racial discrimination in the jury selection process, reaffirmed its previous ruling. The trial court's order, which embodies its findings in this regard, has been filed with us, and we consider it as a return to our remand. For a better understanding of this matter, we set out the pertinent part of this order, as follows:
"The above-styled cause was remanded for reconsideration of the Court's ruling in regard to a motion filed alleging race-based striking by the State in violation of the principles of law set forth in Batson v. Kentucky in light of Branch v. State and Shelton v. State [, 521 So.2d 1035 (Ala.Cr.App.1987), cert. denied, 521 So.2d 1038 (Ala.1988) ]. The Court agrees that the State's explanations of its strikes citing body language, demeanor and negative attitude seem on their face to be somewhat tenuous. However, after a review of all of the facts and circumstances and the Court's own recollection of the jury voir dire process by both the State and defense, the Court is satisfied that the State did not use race as a basis for using its peremptory strikes. The Court cannot specifically identify the members of the jury panel who exhibited negative *126 body language or demeanor. At the same time the Deputy District Attorney who conducted voir dire was very close to the jury due to acoustical problems with the Chambers County Courthouse. The Court did notice that some of the jurors seemed to respond more favorably toward one side or the other. Some of the jurors who seemed very uninterested toward the State's questions seemed more receptive to defendant's attorney.
"Later, during a hearing on defendant's Batson motion, the Court was satisfied with the State's explanation of its peremptory strikes based on its own observation of voir dire and on the demeanor of the Deputy District Attorney who explained the State's strikes. The Court is completely satisfied of the honesty of the Deputy District Attorney. Consequently, the Court reaffirms its ruling denying defendant's motion to quash."
In the instant case, appellant is black and the victim white. The prosecution used 12 of its peremptory strikes to exclude all blacks from the jury venire. Appellant objected on the ground that the prosecutor had used her strikes to systematically exclude blacks from the jury solely because of their race. The objection was timely. The trial court did not expressly rule that a prima facie case of discrimination had been established by appellant, but required the prosecution to explain its peremptory strikes. After the prosecutor explained her 12 black strikes, the trial court overruled appellant's objection and denied his motion to quash the jury panel.
We follow the rule that, when the prosecution's explanations for its strikes are of record, we will review the trial court's findings, even though there has been no express finding by the trial court that a prima facie case of discrimination has been established. Currin v. State, 535 So.2d 221 (Ala.Cr.App.1988). See also United States v. Forbes, 816 F.2d 1006 (5th Cir.1987). From the record in this case, we can fairly conclude that the inquiry into the prosecution's explanations implied such a finding and shifted the burden of justification to the prosecution. The trial court stated, when requiring explanations from the prosecution, "I suppose you need to justify the fact that there are no blacks on this jury." While we are not particularly concerned here with the establishment of a prima facie case of discrimination, we believe that the use of 12 peremptory strikes to remove all blacks from the venire, under the circumstances existing here, established a prima facie case. See Ex parte Branch, 526 So.2d at 622-23.
In explaining the peremptory strikes of blacks, the prosecutor had the burden of articulating a clear, specific, and legitimate reason for each strike, which relates to the case and which is non-discriminatory. Batson, 476 U.S. at 97, 106 S.Ct. at 1723; Ex parte Branch, 526 So.2d at 623. In reviewing the trial court's finding that the strikes were non-discriminatory, we can reverse only if we find that the determination was clearly erroneous. Floyd v. State, 539 So.2d 357 (Ala.Cr.App. 1988); Owens v. State, 531 So.2d 22 (Ala. Cr.App.1987).
We have considered the reasons given by the prosecutor for the peremptory striking of all blacks. We conclude that sufficient race-neutral reasons were given for striking black venirepersons number 2, 4, 43, 46, and 74. Number 2 knows the appellant and is about his age, number 4 lives next door to appellant, number 43 is related to appellant, number 46 has difficulty hearing, and number 74 is a defendant in a pending criminal case. As to the remaining venirepersons, number 33, 42, 108, 125, 104, 122, and 118, we are troubled by the reasons given and have grave doubts as to their legitimacy. Venirepersons number 33, 42, 108, and 125 were struck for the same alleged reason, i.e., that his or her demeanor, attitude, and body language indicated a negative attitude toward the prosecutor and the state's case. The reasons given for striking number 104 were that the venireperson is the same age as appellant and that a family with a similar name is under investigation. Number 122 was struck because he has the same last name as defendants in prior *127 cases, and number 118 was struck because he is the same age as appellant.
An examination of the voir dire questioning shows a complete lack of meaningful questions directed to the black venirepersons and related to the reasons given for striking them. "A prosecutor's failure to engage black prospective jurors `in more than desultory voir dire, or indeed to ask them any questions at all,' before striking them peremptorily, is one factor supporting an inference that the challenge is in fact based on group bias." People v. Turner, 42 Cal.3d 711, 726 P.2d 102, 111, 230 Cal. Rptr. 656 (1986). Our supreme court in Ex parte Branch observed that "a lack of questioning to the challenged juror, or a lack of meaningful questions" is a consideration to support the finding that the proffered explanations are a "sham or pretext." 526 So.2d at 623, 624.
Although the prosecutor relied on age as one factor in striking number 104 and as the only reason for striking number 118, she made no effort on voir dire to determine the venirepersons' ages. Strikes based on age, while sometimes relevant, are basically group-biased strikes, and where the group trait is not shown to apply to the venireperson specifically, the explanation based on age may indicate a sham or pretext. No inquiry was made into any age-based biases the venirepersons may have had. In addition to age, the prosecutor gave as a reason for striking number 104 the explanation that a family with a similar name was being investigated. A similar reason was given for striking number 122, i.e., there had been other defendants in prior cases with the same last name. The prosecutor could have resolved her suspicions by asking a few simple questions on voir dire, but she did not do so. In Ex parte Branch, the court found that "intuitive judgment or suspicion by the prosecutor is insufficient to rebut the presumption of discrimination." 526 So.2d at 623. The explanations given for striking number 104, 122, and 118 are suspect.
The prosecutor's reasons for challenging venirepersons number 33, 42, 108, and 125 are based on demeanor, looks, and body language. The prosecutor stated that, because of these observations, she felt that the venirepersons had a negative attitude toward her and the state's case. The actions of the venirepersons are not described in detail in the record. The trial court, in its findings, tends to support the explanations of the prosecutor to some extent; however, the support is equivocal. While we recognize that this type of reason can constitute a valid race-neutral explanation for peremptory strikes under some circumstances, Ex parte Branch, 526 So.2d at 629, n. 16; Currin v. State; People v. Charron, 193 Cal.App.3d 981, 238 Cal.Rptr. 660 (Dist.Ct.App.1987), it presents considerable difficulty to the trial courts as well as to the reviewing authorities in determining its truthfulness. This type of non-specific explanation based on body language or looks could become "the standard untestable post-hoc justification for what is in reality an unconstitutional exclusion based on group discrimination." People v. Charron, 193 Cal.App.3d at 991, 238 Cal.Rptr. at 666. For these reasons, such explanations should be closely scrutinized by both the trial and appellate courts. If the prosecutor had struck only one venireperson because of negative looks or body language, the explanation would carry more weight. The fact that the prosecution, in the instant case, struck four for these reasons weakens her explanations. It is arguable that, where she did not have a specific reason to justify striking a black venireperson, she relied upon the nonspecific reasons of looks, demeanor, and body language. It seems unusual that four out of twelve prospective jurors would exhibit the same negative-type behavior.
Any inferences arising from the use of peremptory strikes to remove blacks from the jury venire should be viewed together with other relevant circumstances to determine whether purposeful discrimination has occurred. Ex parte Branch; Currin v. State. We find it significant that the persons challenged, although all black, include both men and women of different ages, occupations, and backgrounds; that the striking of the instant jury discloses *128 a pattern of strikes against black jurors; that the state's voir dire was perfunctory and general in nature; that the voir dire lacked specific meaningful questions directed to the venirepersons struck; that the manner in which the strikes were exercised resulted in a disparate impact against members of the black race; and that the peremptory challenges were used to dismiss all black jurors. See Ex parte Branch, 526 So.2d at 622-23. We are unable to determine from the record before us whether there was a disparity between the treatment of blacks and whites in the selection process. In other words, were any whites challenged for the same reasons? No explanation is given for other strikes, nor does the record show that there were other strikes.
We are not unmindful of the deference to be accorded the trial court's findings in this case, Scales v. State, 539 So.2d 1074 (Ala. 1988); Currin v. State, Owens v. State. Nevertheless, after considering the explanations given by the prosecutor for her peremptory strikes and all reasonable inferences that can be drawn therefrom, along with all relevant circumstances surrounding the striking of the jury, we find that the trial court's ruling that the state did not use race as a basis for its peremptory strikes is clearly erroneous as to venirepersons number 33, 42, 108, 125, 104, 122, and 118. Appellant's motion to quash the jury panel should have been granted. It is our opinion that the prosecutor failed to meet her burden of establishing clear, specific, and legitimate race-neutral reasons for these strikes. The striking of one venireperson for a racial reason violates the Equal Protection Clause, even when valid reasons for striking some black venirepersons are shown. United States v. David, 803 F.2d 1567 (11th Cir.1986); Acres v. State, [Ms. 3 Div. 843, October 28, 1988] ___ So.2d ___ (Ala.Cr.App.1988); Owens v. State. We find the prosecutor's explanations for striking these venirepersons to be constitutionally insufficient. Thus, the judgment is reversed and appellant is entitled to a new trial.

II.
Appellant raises additional issues on appeal concerning his arrest and the pretrial and in-court identifications by the victim. He contends that the trial court committed reversible error by denying his motion to suppress the victim's in-court identification of appellant. He argues that his arrest was without probable cause and that the victim's subsequent identification of him at a police station "show-up" was tainted by the prior illegal arrest and should have been suppressed. He further argues, in effect, that the pretrial identification proceeding at the police station was impermissibly suggestive, thereby tainting the victim's in-court identification.
The record shows that the police officers, after receiving a description which generally matched appellant, proceeded immediately to his home. They knocked on the door, and appellant's mother came to the door. The officers asked her if appellant was home, and she said that he was not. They then asked if they could enter the house and look around, and she asked them if they had a warrant. One of the officers stated that they did not have a warrant, but that they could get one, whereupon appellant's mother stated that the officers could come in and look in the house. Appellant was discovered, hiding in the house. He was handcuffed, placed in the police car, and transported to the police station. The victim was brought to the police station, where a confrontation or "show-up" was conducted, and the victim identified appellant as the person who had snatched her purse.
Due to the paucity of the record and the lack of specific findings by the trial court, we cannot say with assurance that the arrest was not unlawful. Having reversed the judgment in this case and ordered a new trial on another ground, we find it unnecessary to resolve this issue at this time. However, should the case be retried, the trial court may find it advisable to explore these issues further. It may wish to conduct a further hearing and/or make explicit findings as to the validity and effect *129 of the arrest, the suggestiveness of the "show-up," and the admissibility of the in-court identification. For guidance, we point out that the Supreme Court has held that the Fourth Amendment prohibits police from making a warrantless and non-consensual entry into a suspect's home to make a routine felony arrest. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In so holding, the Payton Court made it clear that an exception to this prohibition exists where probable cause to arrest the suspect exists and there are exigent circumstances making it impossible or imprudent for a warrant to be obtained. 445 U.S. at 588, 590, 100 S.Ct. at 1381, 1382 (approving Dorman v. United States, 435 F.2d 385 (D.C.Cir.1970) (en banc)). The record in the instant case does not disclose what exigent circumstances existed, if any, to support a warrantless arrest of appellant in his residence, assuming probable cause existed in the first place. Even though the officers contended that appellant was not arrested, we have no difficulty in holding that appellant was, indeed, placed under arrest in his home. The state contends that appellant's mother consented to the entry of the officers into her residence. Because of the sketchy record before us, we have difficulty in determining whether the consent was voluntary and we suggest that the parties consider developing the record further in this regard if the matter arises in a new trial. The testimony of the officer that he informed appellant's mother that he could obtain a search warrant if she refused to give consent raises questions concerning the voluntariness of the consent. "[A] threat to seek a warrant cannot always be said to be without any coercive effect, and... it is necessary to take account of the intelligence of the consenting party...." 3 W. Lafave, Search and Seizure § 8.2(c) (2d ed. 1987). See also United States v. Sebetich, 776 F.2d 412 (3d Cir.1985), cert. denied, ___ U.S. ___, 108 S.Ct. 725, 98 L.Ed.2d 673 (1988).
We reverse the conviction and remand this case to the trial court with the instruction that it grant appellant a new trial.
OPINION EXTENDED; REVERSED AND REMANDED WITH INSTRUCTIONS.
All Judges concur.