[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 666 
Jacob Warner was indicted for the capital murder of Charles Williams in violation of Ala. Code 1975, § 13A-5-40, subsections (a)(2) (murder during a robbery), (a)(4) (murder during a burglary, two counts), and (a)(14) (murder of a witness). His trial was consolidated with that of Terry Bird. See Bird v.State, 594 So.2d 644 (Ala.Cr.App. 1990). Both defendants were convicted. The trial judge accepted the recommendation of the jury and sentenced Warner to life imprisonment without the possibility of parole. This appeal is from that conviction.
 I
Warner made a timely motion to quash the jury panel based on the allegation that the State used its peremptory strikes in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986). Upon the motion being made, the prosecutor volunteered to state the reason for each strike. The trial court did not make a specific finding of whether a prima facie case of purposeful discrimination had been proven.
The parties struck from a panel of 52 veniremembers, 19 of whom were black. The State used 17 of its 20 peremptory strikes to remove blacks. The defendant struck one black.
The chief deputy district attorney stated her reasons for her peremptory strikes on direct examination by an assistant district attorney. We summarize those reasons as follows:
 1. No. 1: Henry Campbell was a minister and indicated that did not believe in the death penalty. He knew defendant Warner. He appeared to have some problem in focusing one of his eyes.
 2. No. 83: Margaret Keeler indicated that she did not believe in the death penalty and called it murder. Her husband was employed by the ABC Board. The district attorney had recently conducted an extensive investigation of the Board which had resulted in a prosecution.
 3. No. 87: Samuel Weatherly was 78 years of age, was opposed to the death penalty, and had a paternity case in family court. The prosecutor considered the affect the length of the trial and the "gory" photographs would have on this veniremember.
 4. No. 75: L.T. was recognized as "well known" for "suspicion of shoplifting" in Parisian's department store. This information was supplied to the prosecutor by a staff member of the district attorney's office who was also employed at Parisian's. Ms. T. was 19 years of age, about the same age as defendant Bird.
 5. No. 3: Dianetta Dixon indicated that she knew one of the Bird family members. The prosecutor anticipated that the defense might call family members to present mitigating evidence. The district attorney had recently prosecuted "almost a whole family" of Dixons in a tax-related case and was concerned that this veniremember might be related and harbor some animosity toward the State.
 6. No. 93: Daisy Perry was reluctant and did not want to impose the death penalty. *Page 667 
 7. No. 26: Patricia Broadnax lived in a "high crime area" where "many drugs and burglary type cases" were "going on." The prosecutor stated that "we had some difficulties in that area." The district attorney had prosecuted a Broadnax and the prosecutor felt that this venireperson could be related to that defendant.
 8. No. 31: Bernard Ashley had been charged with possession of marijuana. He had heard of defense counsel for defendant Warner.
 9. No. 33: Alma Smith had been a juror in a criminal case that had been dismissed. The prosecutor expressed concern that she might have a "possible problem or bad taste" about the criminal justice system for that reason. She lived in the defendant's neighborhood. She had difficulty talking and communicating and did not appear to be familiar with the term "shoplifting."
 10. No. 113: Elizabeth Geeter was a teacher and knew the wife of defendant Warner. Although the prosecutor had information that her husband was employed, Mrs. Geeter indicated that he was unemployed. The prosecutor was concerned that he might have been fired.
 11. No. 97: Joseph Jarrett was 73 years of age. He did not raise his hand to be sworn when requested. The prosecutor did not know whether this was due to a physical ailment or a hearing difficulty. He indicated that he could not hear "low voices."
 12. No. 37: Sarah Lowery had charges of speeding and disorderly conduct. She was a teacher and the prosecutor felt that "teachers very frequently make jurors who tend to look for ways to forgive and forget." She "very clearly and forcefully" indicated that she did not know any of the attorneys or the defendants and their families but totally omitted to indicate whether or not she knew the victim.
 13. No. 45: Brenda Harris's husband was an assistant basketball coach at Alabama State University. ASU had been under a lengthy investigation by the district attorney involving allegations of trading sexual favors for grades. Evidence of "sexual activity" might be introduced in this case.
 14. No. 96: L.W. was single and self-employed as a private duty nurse. He had at least two driving violations. The prosecutor's observations of this venireperson — the way he answered, what he said, the way he crossed his legs, the way he looked — indicated to her that he had "tendencies being homosexual." The prosecutor stated that this venireperson had some "effeminate traits" and was "very dainty." The victim in this case was a homosexual and there might be evidence of homosexual activity. Mr. W. indicated that he knew a witness for the defense.
 15. No. 27: Brenda Belser lived in an area in which the prosecutor had had a number of defendants. She was 24 years of age and might identify with defendant Bird for that reason. She initially indicated that she had some reservations about the death penalty but eventually "seemed to be okay about that." She had a misdemeanor conviction for negotiating a worthless instrument and did not respond when the venire was questioned about misdemeanor convictions.
 16. No. 76: Pamela Reed was 26 years of age and had a college degree but was "just" a cashier at a "finance kind of company." The prosecutor had information that she worked as a "data entry person." The prosecutor was concerned that Ms. Reed was not using her degree and that she may have had problems at work. She lived in a high crime *Page 668 
area and there had been a shooting recently in that general area. The prosecutor was familiar with this area of town because her parents used to live in that area. The prosecutor testified that "there was just something nagging at me about her. . . . [I]t's the way she answered the questions. It was just something about her that made me feel like she would not be a strong juror. That is, not more likely to convict than to acquit."
 17. No. 91: Jocelyn Weems was expecting a child. The prosecutor expressed concern over the effect the length of the trial would have on Mrs. Weems as well as the effect of photographs and a video depicting the "gruesomeness" of the crime. Mrs. Weems was 26 years of age, about the same age as defendant Bird. She had violations for speeding and for passing a stopped school bus, about which she laughed and denied her guilt. The prosecutor was concerned about her attitude toward law enforcement.
On cross-examination of the deputy district attorney, defense counsel attempted to establish that the State had left whites on the jury with the same or similar characteristics to blacks it had removed. Although the prosecutor stated that she "recall[ed] striking every teacher that [she] remember[ed]," the prosecutor testified that she had not struck juror Ruth Sanders (no. 6), because she was informed that her husband was a "counselor/evaluator," and not a teacher at a local school. We note that the State did strike venireperson no. 48, Douglas Sileo, a white male, whose wife was a teacher. We also note that in Williams v. State, 548 So.2d 501, 505 (Ala.Cr.App. 1988), this same prosecutor struck school counselors on the assumption that they either disapproved of or would respond less favorably to the punitive nature of a criminal prosecution.
Although the prosecutor struck veniremembers who knew defense witnesses, she did not strike juror number 30, Betty Dean, who knew a defense witness, because she had information that the witness would be out of the country and unavailable to testify. She did not strike juror Helen DePorter (no. 39), who had a traffic conviction because the conviction was 15 years old. She did not strike juror Alva Ray (no. 103), who was 74 years of age and who had sat on a jury which had returned a not guilty verdict, because she had no personal observation or indication that he was not in good health. Mrs. DePorter had also been a member of a jury which had returned a not guilty verdict, according to defense counsel.
Defense counsel represented that several jurors lived in high crime areas but were not struck by the State. The prosecutor stated that she did not know where Garden Dale was located where juror Lanatha Nelson (no. 7) lived, although she was familiar with a murder on Patton Court. She did not know that juror Ruth Sanders lived in the Hunter Loop area in the same vicinity where one of the State's witnesses had, according to defense counsel, committed three burglaries, about which the prosecutor also had no knowledge. She was not aware of any recent particular crimes in the Harrison Road area where juror Betty Dean (no. 30) lived.
Although the prosecutor testified that, "I believe we struck everyone we thought had a connection to someone we had prosecuted," she stated that she did not know that juror Donald Mitchell (no. 64) had been prosecuted in the circuit court. It was established that juror Mitchell was not the same Donald Mitchell that had been represented by defendant Warner's counsel in the circuit court prosecution. Defense counsel did not attempt to establish the truth of any of the alleged facts contained in his questions on cross-examination of the chief deputy district attorney. At one point, a prosecutor requested the trial judge to instruct defense counsel not to engage in "deliberate deception" in his questioning.
The chief deputy district attorney testified with regard to a "high crime area" that there are "[t]wo ways we look at it, as *Page 669 
a place where a lot of crimes tend to occur; the other is where people who commit those crimes live." The prosecutor also stated that "[s]tudies have shown that most crimes are committed by people in the area."
Although the prosecutor struck veniremember Smith, who did not know why a criminal case had been dismissed, the prosecutor did not strike juror Emily Conoly (no. 19), who could not remember what kind of case she sat on. The prosecutor stated that her notes did not indicate Mrs. Conoly had any prior jury service and that a member of the district attorney's office knew her husband and said that she would make a very good juror. We note that the prosecutor did strike veniremember Mack Garland (no. 107), a white male, because he was not satisfied with the investigation of a burglary by the Montgomery Police Department.
At the conclusion of the cross-examination of the deputy district attorney, the trial judge stated: "I'm not prepared at this time to rule on that motion. I have concerns about Mrs. Broadnax and concerns about Mrs. Harris; I am satisfied about the remaining jurors that are in question." After a recess and further argument, the trial judge stated:
 "I have examined this matter closely, and I appreciate the State handing me up a copy of the Lynn case on remand, [Lynn v. State, 543 So.2d 704
(Ala.Cr.App. 1987), affirmed, 543 So.2d 709 (Ala. 1988)] which proves to be further instructive to the court. I think my initial inclination in this case was to put too great of a burden on the State in explaining its reasons in this case. I note from reading Batson versus Kentucky that the case of McCray versus Abrams . . . there is a statement which is further instructive in this case, in there are any number of bases on which a party may believe not unreasonably, that a prospective juror may have some slight bias that would not support a challenge for cause, but would make excusing him or her desirable. I believe and find that the State's reasons in this case for excusing the two jurors who I had questions about are genuine. I find that they are not violative of the rule in Batson versus Kentucky. And on the Lynn case, appear to be one of the grounds particularly applicable to the Lynn case, in a high-crime area. Accordingly, I am going to deny the motion made in this case by counsel for the defendant Warner.[1] I do not believe that defendant Byrd[2] had standing to assert the motion."
A prosecutor may not use peremptory jury strikes in a racially discriminatory manner. Batson, supra. The principles of Batson, as interpreted by the Alabama Supreme Court, are set out in Ex parte Branch, 526 So.2d 609 (Ala. 1987), and Harrellv. State, 555 So.2d 263, 265 (Ala. 1989) ("We take this opportunity to clarify the Batson analysis."). Applying those principles to the facts of this case, we find that the tenets of Batson and Branch have been minimally satisfied.
In Harrell v. State, 555 So.2d at 268, n. 1, the Alabama Supreme Court noted:
 "There are many possible reasonable explanations for such strikes [of blacks by the prosecution]. Batson demands that such strikes be related to the case to be tried and not be related to the defendant's and the jurors' shared race. Batson, 476 U.S. 79, 97-98, 106 S.Ct. 1712, 1723-24, 90 L.Ed.2d 69 (1986). In a given case, the following factors may be relevant and may suffice to defeat the defendant's prima facie case:
 "1. Age, fringe religious beliefs, body english, handwriting, and name association in certain instances. Tolbert v. State, 315 Md. 13, 553 A.2d 228 (1989); *Page 670 Chambers v. State, 724 S.W.2d 440 (Tex.Ct.App. 1987).
 "2. Demeanor of the juror. United States v. Forbes, 816 F.2d 1006, 1010 (5th Cir. 1987).
 "3. Fact that prospective juror, like defendant, may be young, single, and unemployed; fact that prospective juror was struck because divorced and of low income occupation, in favor of a professional, married person; avoidance of eye contact with prosecutor. United States v. Cartlidge, 808 F.2d 1064, 1070-71 (5th Cir. 1987).
 "From a consideration of these factors it is clear that the explanation need not rise to the level of a challenge for cause. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. However, a clear, reasonable explanation for the strike must be given. Ex parte Branch, 526 So.2d 609, 623-24 (Ala. 1987)."
That a veniremember has reservations about the death penalty, though not sufficient for a challenge for cause, may constitute a race-neutral and reasonable explanation for the exercise of a peremptory strike. Smith v. State, 531 So.2d 1245, 1247-48
(Ala.Cr.App. 1987) ("was opposed to capital punishment, had problems with sitting in judgment of others"); Levert v. State,512 So.2d 790, 795-96 (Ala.Cr.App. 1987) ("would leave it up to the Lord to take care of — to be the ultimate judge and the ultimate provider of punishment for criminals").
The fact that a veniremember is a preacher, pastor, or a minister may constitute a sufficient reason. Lockett v. State,517 So.2d 1346, 1351 (Miss. 1987). See also Currin v. State,535 So.2d 221, 224 (Ala.Cr.App.), cert. denied, 535 So.2d 225
(Ala. 1988).
Connection with or founded suspicion of criminal activity may constitute a sufficient reason. Powell v. State, 548 So.2d 590,592-93 (Ala.Cr.App. 1988), affirmed on other grounds,548 So.2d 605 (Ala. 1989) ("stated that she had an uncle who was falsely prosecuted and, in fact, served 27 years until he was pardoned or released; testified for her grandson in a rape trial; and had a brother who was either the victim or the defendant in a murder case;" "charged with DUI . . .; carnal knowledge, sexual assault, . . . drawing a weapon . . .; and speeding;" "his nephew was a defendant;" "had been prosecuted for concealing identity, public nudeness, and possession of marijuana;" "had three running-a-red-light and two speeding charges within the last 2 1/2 years"); Lynn v. State, 543 So.2d 704, 709
(Ala.Cr.App. 1987), affirmed, 543 So.2d 709 (Ala. 1988) (venireperson's father "had a felony record and had been convicted of a drug related offense" and venireperson was "reputed to be connected with drugs"); Ward v. State,539 So.2d 407, 408 (Ala.Cr.App. 1988) ("past criminal records"); Avery v.State, 545 So.2d 123, 126 (Ala.Cr.App. 1988) ("defendant in a pending criminal case"); Lewis v. State, 535 So.2d 228, 232
(Ala.Cr.App. 1988) (victim or defendant in a criminal case);Currin, 535 So.2d at 223 ("believed to be involved in forgery case;" "sister to a local criminal suspected of double murder;" "either she or her immediate family has had several felony arrests;" "connected with recently charged individuals"). See also United States v. Vaccaro, 816 F.2d 443, 457 (9th Cir.), cert. denied, 484 U.S. 914, 108 S.Ct. 262, 98 L.Ed.2d 220
(1987).
Prior service as a juror in a criminal case may constitute a reasonable explanation. United States v. Power, 881 F.2d 733,740 (9th Cir. 1989) ("recently completed service on another jury"); Watkins v. State, 551 So.2d 421, 422-23 (Ala.Cr.App. 1988) ("served on a jury . . . where the defendant was found not guilty;" "served on two juries," one civil and one criminal, neither of which were able to reach a verdict);Smith, 531 So.2d at 1248 ("sat on a jury in a criminal case that returned a verdict of not guilty"); Thomas v. State,520 So.2d 223, 226 (Ala.Cr.App. 1987) ("had been a juror on a civil case wherein the monetary award 'went both ways' "); Levert,512 So.2d at 795 (prior service in a criminal trial where the verdict was "in great contrast to the theory of the case presented by the prosecution"). *Page 671 
Physical or mental impairments or disabilities of a veniremember may justify a strike. Avery, 545 So.2d at 126
("difficulty hearing"); State v. Stubbs, 544 So.2d 90, 91
(La.App. 3 Cir.), cert. denied, 550 So.2d 647 (La. 1989) ("was hard for the prosecutor to understand some of her answers to the questions"); Williams, 548 So.2d at 505 ("inability to read and write"); Nesbitt v. State, 531 So.2d 37, 40 (Ala.Cr.App. 1987) ("might not possibly be able to properly stay in touch with the proceedings as they went on and that he could possibly not hear all of the evidence").
A hostile attitude toward law enforcement or dissatisfaction with the police may justify a peremptory strike.Powell, 548 So.2d at 593 ("some dissatisfaction with the police department's handling of a burglary investigation involving her"). But see Madison v. State, 545 So.2d 94, 98, 100
(Ala.Cr.App. 1987) ("hostility to the police in this community," challenge not justified).
The location of the residence of a veniremember may provide a proper justification for a peremptory strike. Avery,545 So.2d at 126 ("lives next door to appellant"); Ex parte Lynn,543 So.2d at 711 ("lived in same neighborhood as the defendant's grandmother and aunt;" "lived one street over from the co-defendant"). However, "the bare fact that [the venireperson] lived in a high crime area does not warrant the assumption that [that person] would be less interested in law enforcement or would be intimidated by appellant." Williams,548 So.2d at 506. ("A few simple questions addressed to this venireperson on voir dire would have cleared up any doubt concerning the matter, but they were not asked."). Voir dire questioning may be necessary to establish such a bias or hostility.
 "Regardless of the reason for the lack of meaningful voir dire examination, the fact of the matter is that it was not undertaken and its absence here must be weighed against the state's position. We reiterate that the fact that the black jurors who were challenged without being examined on voir dire in reference to possible bias because of their employment, position in society, age, and residence raises a strong inference that they were excluded on the basis of race alone."
Id. at 508.
Each case of alleged discrimination must be judged on its own particular merits. See United States v. Davis, 871 F.2d 71,72-73 (8th Cir. 1989) (prosecutor considered several factors, including residence in defendant's neighborhood); Shelton v.State, 521 So.2d 1035, 1038 (Ala.Cr.App. 1987), cert. denied,521 So.2d 1038 (Ala. 1988) (a former assistant district attorney had previously resided in the area and "had spoken disparagingly" of the neighborhood and its residents; "the sentiment aroused in that community because of those [prior unrelated] trials [of several individuals from that community] was not favorable to the prosecution"); Currin,535 So.2d at 223 ("area of residence"). In this case, we find the State's reasons based on residence highly suspicious. However, the location of the residence of the veniremember was not the sole reason given by the State for striking a particular venire member. Had it been the sole reason, we most assuredly would have found a violation of Batson and Branch.
An explanation for a strike because the veniremember has the same last name as someone whom the district attorney's office has prosecuted or investigated is, by itself, suspect.Avery, 545 So.2d at 127. "[I]ntuitive judgment or suspicion by the prosecutor is insufficient to rebut the presumption of discrimination." Branch, 526 So.2d at 623. See also Floyd v.State, 539 So.2d 357, 363 (Ala.Cr.App. 1987) ("We find the prosecutor's explanation that the Effords could conceivably be related to the previously prosecuted Efford to be inadequate").
However, "the vagarious process of choosing jurors need not be controlled by a simple equation; it may be influenced by intuitive assumptions that are not fatally suspect merely because they are not quantifiable, see [United States v.]Forbes, 816 F.2d [1006] at 1010-11 [(5th Cir. 1987)], *Page 672 
and by the interplay of various factors, see United States v.Lewis, 837 F.2d 415, 417 n. 5 (9th Cir. 1988)." United Statesv. Lance, 853 F.2d 1177, 1181 (5th Cir. 1988). "In Lance, we upheld such factors as eye contact, demeanor, age, marital status, and length of residence in the community as valid grounds for peremptory challenge. In this case, the reasons articulated are of the same variety. 1 * * * 1. These include having the same last name as someone previously convicted by the prosecutor; age; eye contact; and body language." UnitedStates v. Terrazas-Carrasco, 861 F.2d 93, 94-95 (5th Cir. 1988). See also United States v. Tindle, 860 F.2d 125, 129 (4th Cir. 1988), cert. denied, 490 U.S. 1114, 109 S.Ct. 3176,104 L.Ed.2d 1038 (1989) (fact that last name of venireperson "closely resembled" that of a defendant in a trial prosecuted by same assistant prosecutor involved in the present case "was a neutral and non-pretextual reason to challenge").
Like the trial judge, this court has concern about several of the reasons articulated by the deputy district attorney for the exercise of her peremptory jury strikes. Such reasons as living in a "high crime area," having a last name identical to a defendant in another case, being a teacher or minister, and merely being associated with an organization under investigation by the prosecutor generate suspicion because they are not related to "the particular case to be tried," because they are based on intuitive judgment and suspicion which are insufficient to rebut the presumption of discrimination, and because there was no meaningful voir dire attempting to uncover any suspected bias. Ex parte Branch, 526 So.2d at 623 (emphasis omitted). Explanations based on "gut feelings" obviously fall short of the Batson requirement. United States v. Horsley,864 F.2d 1543, 1546 (11th Cir. 1989). " '[A]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically' [is the type of evidence that can be used to show sham or pretext]. Slappy [v. State, 503 So.2d [350] at 355 [(Fla.Dist.Ct.App. 1987)]. For instance, an assumption that teachers as a class are too liberal, without any specific questions having been directed to the panel or the individual juror showing the potentially liberal nature of the challenged juror." Ex parte Branch, 526 So.2d at 624. See alsoWilliams, 548 So.2d at 507 ("The explanation given for some of the strikes was based on an assumed employment group bias, which was not shown to apply factually to any venireperson specifically or to the facts of the particular case. No explanation was offered to explain why a school teacher, a college counselor, a school lunchroom worker, or a person connected with a mental health organization would be against, rather than in favor of, the prosecution. . . . That these persons were challenged without being examined on voir dire in reference to any possible bias they might have because of their employment or position in society raises a strong inference that they were excluded on the basis of race alone."); UnitedStates v. Wilson, 867 F.2d 486, 487-88 (8th Cir. 1989), cert. denied, 493 U.S. 827, 110 S.Ct. 92, 107 L.E.2d 57 (1989) (explanation for striking venireman due to his occupation as a social worker coupled with his professional contact with defense lawyers but not with prosecutors was reasonable).
" 'Failure by a prosecutor to explain every peremptory strike of black jurors is not necessarily fatal to the prosecutor's ability to rebut a prima facie case; likewise, explanation of most of the strikes on nonracial grounds does not necessarily rebut the inference created by Batson that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." 'United States v. David, 803 F.2d 1567, 1571 (11th Cir. 1986)."Currin, 535 So.2d at 223.
In considering this issue, we have taken note of the fact that the State in this case does not write on a clean slate. A number of cases prosecuted in Montgomery County have been reversed because of a Batson violation. Powell v. State,548 So.2d 590 (Ala.Cr.App. 1988), affirmed on other grounds,548 So.2d 605, 606 (Ala. 1989); Williams v. State, 548 So.2d 501
(Ala.Cr.App. 1988); Acres v. State, 548 So.2d 459 (Ala.Cr.App. 1987). This consideration *Page 673 
is a relevant factor in our review. United States v. Hughes,864 F.2d 78, 80 (8th Cir. 1988). In view of this fact and the fact that the chief deputy district attorney testified that she "highly expected" that she would have to justify her peremptory challenges against blacks with racially neutral reasons, we are somewhat puzzled by some of the very weak justifications given by the State. Despite this, we find no Batson violation.
" 'A prosecutor's failure to engage black prospective jurors "in more than desultory voir dire, or indeed to ask them any questions at all," before striking them peremptorily, is one factor supporting an inference that the challenge is in fact based on group bias.' People v. Turner, 42 Cal.3d 711,726 P.2d 102, 111, 230 Cal.Rptr. 656 (1986)." Avery, 545 So.2d at 127. In this regard, the following observation is relevant:
 "We refuse to require the government to ask follow-up questions to every stricken venireman during voir dire in order to defeat a Batson challenge. A balance must be struck between fair jury selection procedures and the need to move promptly toward trial. The decision not to ask follow-up questions is a matter of trial strategy; failure to do so is not dispositive of the thoughtfulness of the prosecution's exercise of its peremptory strikes. Indeed, no genuine need for follow-up questions may exist. Here, in fact, the government was already familiar with every potential juror. Each individual had responded to general questions, appeared in chambers for individual questioning, and completed a questionnaire."
United States v. Grandison, 885 F.2d 143, 147 (4th Cir. 1989).
In this case, each veniremember responded to general questioning and had completed a written questionnaire. The deputy district attorney testified that before the voir dire began, she had information about the veniremembers:
 "It's a common practice in our office to research every juror's name that is submitted to us that may become a member of the jury venire. We do things such as check their criminal records in the District Attorney's office, child support office, with the worthless check unit, with the State criminal justice system, with the Alabama DPS, with the District Court, City Court and any other source of information we can find as to crime records. We also circulate the information amongst the employees in the office, of all jurors to see if anyone knows anyone. . . . We also check the jury questionnaire forms to see what if any comments those jurors might have written on them, such as have difficulties at home or can't read or write. We also get biographical information from the clerk's office which is available on the occupational strike list. . . . I also attended this morning the jury orientation that was conducted prior to our beginning the strike process today, to make observation of the jurors there. While the jurors were being questioned by the jury today, I made observation and did record some notes to articulate as best I could, feelings that I had, any information that was given. Then prior to actually striking the jury, I met with Deputy District Attorney Maddox and Becher to discuss possible strikes, and the order in which we might strike jurors."
In this case, one black served on the jury. InGrandison, 885 F.2d at 147, it was observed: "Although the presence of minorities on the jury does not mean that a Batson
prima facie case cannot be made, . . . the fact that the jury included two black jurors is significant." We find other observations of the court in Grandison applicable here.
 "No per se rule exists to establish a prima facie case of purposeful discrimination. [United States v.] Lane, 866 F.2d [103], 107 [(4th Cir. 1989)]; United States v. Sanqineto-Miranda, 859 F.2d 1501, 1521 (6th Cir. 1988); United States v. Montgomery, 819 F.2d 847, 851 (8th Cir. 1987); [United States v.] Clemons, 843 F.2d [741], 746 [(3d Cir. 1988)]. But see United States v. Chalan, 812 F.2d 1302, 1314 (10th Cir. 1987). Nor does a prosecutorial checklist exist to avoid the inference of discriminatory practices. *Page 674 
 'The Supreme Court's mandate in Batson to consider all the facts and circumstances means that we cannot lay down clear rules as to [what] . . . will constitute or refute a prima facie case.' Sangineto-Miranda, 859 F.2d at 1521.
". . . .
 "A prima facie case of discrimination does not arise 'every time a prosecutor strikes a black prospective juror.' Lane, 866 F.2d at 105. Numerous valid factors may influence a prosecutor to strike a particular potential juror, including 'current and past employment, general appearance and demeanor, previous jury service, and the absence or presence of apparent prejudice.' Id. at 106. While prosecutors may not challenge prospective jurors because of their race, they may exercise their peremptory challenges ' "for any reason at all, as long as that reason is related to [their] view concerning the outcome" of the case to be tried.' Batson, 476 U.S. at 89, 106 S.Ct. at 1719, quoting United States v. Robinson, 421 F. Supp. 467, 473
(D.Conn. 1976), mandamus granted sub. nom. United States v. Newman, 549 F.2d 240 (2d Cir. 1977). Peremptory challenges have long been exercised to ensure both parties the existence of a fair and impartial jury; the usefulness of this device could be undermined by restrictive appellate rulemaking."
Id. at 147, 149.
"In reviewing the trial court's finding that the strikes were nondiscriminatory, we can only reverse if we find that that determination was clearly erroneous." Williams, 548 So.2d at 504. Accord, Ex parte Branch, 526 So.2d at 624. " 'In a Batson
context, the Supreme Court observed that because the trial judge's findings "largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." Batson, 476 U.S. at 98, n. 21[,106 S.Ct. at 1724, n. 21].' " Owens v. State, 531 So.2d 22, 23
(Ala.Cr.App. 1988), quoting State v. Antwine, 743 S.W.2d 51, 66
(Mo. 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755,100 L.Ed.2d 217 (1988). "In reviewing the lower court's ruling, we have been mindful that it is not our function to decide this issue de novo, to 'duplicate the role of the lower court.' "Owens, 531 So.2d at 24. The finding of the trial judge "is entitled to consideration deference on appeal." Harrell,555 So.2d at 268. See also Scales v. State, 539 So.2d 1074, 1075
(Ala. 1988). ("[W]e are convinced that the trial judges in our system are in a much better position than appellate judges to decide whether the truth has been stated").
The trial judge found that the deputy district attorney did not exercise her peremptory jury strikes in a racially discriminatory manner. Our review convinces this court that that finding is not clearly erroneous even though some of the reasons advanced by the prosecutor are only minimally sufficient under the particular facts of this case. We recognize that this must be considered a borderline case. "Although the trial judge could have ruled in favor of defendant on these facts, we cannot conclude that his failure to do so was clearly erroneous." Terrazas-Carrasco,861 F.2d at 95. We issue a caution that, under other circumstances, the very same justifications given by the prosecutor in this case may not be reasonable and may not satisfy the race-neutral requirement of Batson.
 II
Warner raises a number of issues which we fully considered in the companion case of Bird v. State, supra. Specifically, he alleges that the State's pretrial failure to provide him with the statements of Lillian Dudley identifying Sammie McQueen as the person she saw at the scene of the crime violated the discovery order of the trial judge and denied him due process of law; that the testimony of Ms. Dudley should have been excluded; that the State was improperly permitted to rehabilitate the testimony of Ms. Dudley; that the State's failure to provide him with information concerning Dr. Robbins' examination and comparison denied him due process of law and a fair trial; that the trial judge erred in refusing to permit the expert testimony of Dr. Miller; that error was committed in consolidating the cases against Warner *Page 675 
and Bird; and that the jury's verdict is not supported by the evidence. We carefully addressed each of these issues and the arguments advanced by Warner in Bird v. State, supra. We find Warner's arguments on these issues to be without merit for the reasons set out in that opinion.
 III
Houston Gray testified that Warner told him that "they said" that he, Warner, committed the robbery and murder. Gray testified that this conversation occurred while he and Warner were in the "J" cell of the Montgomery County jail in November of 1985. The defense presented, through the testimony of the custodian of the records of the jail, evidence that Warner was not in the Montgomery County jail in November of 1985, and that Warner and Gray were never "confined together" in the jail. This witness also admitted that the records were not 100% accurate and that they "only copy what is in a person's file."
In rebuttal, the State recalled Gray, who testified that the conversation could have occurred in March of 1985, and that "to be honest" he did not know when it took place.
The evidence does show that on March 17, 1986, Warner was assigned to the I-2 cell block of the jail, and that Gray was assigned to the I-3 cell block on March 19, 1986. There was testimony that an inmate assigned to a specific cell block could have been placed temporarily in another cell block without it being recorded on the file. There was also testimony that inmates in cells I-2 and I-3 "can talk back and forth but they cannot see each other."
The State offered an explanation for the apparent inconsistencies in Gray's testimony. We do not consider Gray's testimony unbelievable on its face or that it constituted testimony as to facts that Gray "physically could not have possibly observed or events that could not have occurred under the laws of nature," when all of his testimony is considered.United States v. Rivera, 775 F.2d 1559, 1561 (11th Cir. 1985), cert. denied, 475 U.S. 1051, 106 S.Ct. 1275, 89 L.Ed.2d 582
(1986). See our discussion of the principles involved in Part VIII of our opinion in Bird, supra. We find no error in the trial judge's refusal to exclude the testimony of Houston Gray.
 IV
Warner maintains that the trial judge committed error in refusing five of his requested charges dealing, basically, with the credibility of witnesses and one requested charge concerning the testimony based on evidence which is inherently and physically impossible. Our review convinces this Court that the oral instructions of the trial judge fairly and substantially covered each requested charge. "If a requested charge is subsumed in the court's oral charge, the refusal of the charge is not error. Rule 14, Temp.Ala.R.Cr.P.; see Exparte Wilhite, 485 So.2d 787 (Ala. 1986)." Ex parte Marek, [1989] 556 So.2d 375, 383 (Ala. 1989). The refusal of a requested written instruction does not constitute reversible error where the instruction requested "was substantially and fairly given by the trial court in its general charge to the jury." Stephens v. State, 552 So.2d 162, 163 (Ala. 1989).
Moreover, this issue has not been preserved for review. The defendants' objection was: "And of course we voice objection to our refused charges." In Ex parte Pope, 562 So.2d 131, 135
(Ala. 1989), our Alabama Supreme Court stated: "We held in Exparte Bell, 475 So.2d 609 (Ala. 1985), that in order to preserve an issue of refused jury instructions, it is necessary for the proponent of the instructions to recite briefly the relevant facts in connection with the jury charge." A defendant must state the grounds for objection before error can be assigned to the trial court's refusal of a requested jury instruction. Donovan v. State, 548 So.2d 1087, 1090
(Ala.Cr.App. 1989).
Although the trial judge refused to charge the jury on manslaughter as requested, we find no specific objection to this refusal. Additionally, we find no evidentiary support for a conviction of manslaughter under the facts of this case. *Page 676 
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] In making his motion, defense counsel for defendant Warner stated, "Your Honor, at this time, and I believe that I am speaking on behalf of both defendants, we would make a motion at this time to quash the jury panel based on violation of the United States Supreme Court case known as Batson versusKentucky."
[2] The codefendant's name was sometimes spelled in the record as "Byrd." His case in this Court is styled "Bird v. State."