625 So.2d 1146 (1993)
Ex parte Grady Archie BANKHEAD.
(Re Grady Archie Bankhead v. State).
1911141.
Supreme Court of Alabama.
April 16, 1993.
Rehearing Denied June 4, 1993.
Bryan A. Stevenson and Kevin M. Doyle, Montgomery, for petitioner.
James H. Evans, Atty. Gen., and William D. Little, Asst. Atty. Gen., for respondent.
PER CURIAM.
This Court granted Grady Archie Bankhead's petition for a writ of certiorari to the Court of Criminal Appeals, 625 So.2d 1141 (1992), to review that court's affirmance of a judgment holding that Bankhead's federal and state constitutional rights under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Branch, 526 So.2d 609 (Ala.1987), were not violated by the *1147 prosecutor's use of peremptory strikes in Bankhead's capital murder trial.[1]
The principal question on this petition is whether at the Batson hearing the State articulated clear, specific, race-neutral reasons for its exclusion of each black veniremember.[2] The facts pertinent to a resolution of this issue are as follows:
The venire in Bankhead's capital murder case consisted of 42 members; 32 veniremembers were white and 10 were black. In the jury selection process, the State excluded 8 of the 10 black veniremembers through the use of peremptory strikes; 2 blacks eventually sat on the jury. The State used its remaining strikes to exclude 7 whites.
At the Batson hearing, the State gave the following reasons for excluding the black veniremembers:
Veniremember 57The prosecutor had an unexplainable gut reaction that he was "bad";
Veniremember 175The prosecutor explained that he "rubbed his face" in apparent disgust when the trial court mentioned the possibility of sequestration;
Veniremember 67The prosecutor explained that he did not fit the "best juror profile" because he was an "older black male";
Veniremembers 54 and 89The prosecutor explained that they were struck because they were women and did not fit the "best juror profile";
Veniremembers 109 and 192The prosecutor explained that they had indicated problems with the death penalty and sitting in judgment of another person;
Veniremember 68The prosecutor explained that he begged for money at night and would therefore have problems with sequestration.
The Court of Criminal Appeals did not address the exclusion of veniremember 57 from the jury. This omission was apparently based on the fact that veniremember 57 served as an alternate and sat with the jury until it retired for deliberations. However, this does not change the fact that veniremember 57 was struck from the venire. See Rule 18.4(g)(3), Ala.R.Crim.P. (the last person or persons struck from the venire serve as alternate jurors). Therefore, this Court must evaluate the State's explanation for striking veniremember 57.
Initially, we note that the State's burden of rebutting a defendant's prima facie case of discrimination increases in proportion to the strength of the prima facie case. Ex parte Bird, 594 So.2d 676, 680 (Ala.1991). Here, the State's burden is heavy because of the strength of Bankhead's prima facie case of discrimination. This is so because the State struck 8 of the 10 black veniremembers; the lead prosecutor, Bob McGregor, has been found to have systematically excluded black veniremembers in violation of Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), in Jones v. Davis, 835 F.2d 835 (11th Cir.1988), cert. denied, 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 199 (1988); and the State had failed to conduct any meaningful voir dire of the excluded black veniremembers. All this evidence corresponds perfectly to the factors that this Court enunciated in Ex parte Branch, 526 So.2d 609, 622-23 (Ala.1987), for determining whether the defendant has established a prima facie case of discrimination.
Bankhead argues with particular force with respect to the exclusion of veniremember *1148 57 from the venire. Bankhead asserts that unexplained "gut reactions," such as that offered for the exclusion of veniremember 57, are constitutionally impermissible, according to the dictates of Batson and Branch. This Court does look very unfavorably on the articulation of such reasons, although they are not per se prohibited; this disapproval is evidenced by Bird, supra, where the Court stated:
"Such unarticulated `gut feelings' about a veniremember will not rebut a Branch challenge. Accord United States v. Horsley, 864 F.2d 1543, 1546 (11th Cir.1989); Foster v. State, 557 So.2d 634, 635 (Fla. Dist.Ct.App.1990). Indeed, these `seat of the pants instincts' may often be another term for racial prejudice. Batson, 476 U.S. at 106, 106 S.Ct. at 1728 (Marshall, J., concurring)."
594 So.2d at 684. The State seeks to support its use of the "gut reaction" explanation by relying on Avery v. State, 545 So.2d 123 (Ala.Cr.App.1988). The Avery court stated that the primary danger in allowing such nonspecific, intuitive explanations to rebut the defendant's prima facie case was that such explanations could become "the standard untestable post-hoc justification for what is in reality an unconstitutional exclusion based on group discrimination." 545 So.2d at 127 (quoting People v. Charron, 193 Cal.App.3d 981, 991, 238 Cal.Rptr. 660, 666 (1987)). The State argues that the potential for such reasons to be used in a post-hoc fashion as a pretext for racial bias is absent in this case, because the prosecutor contemporaneously recorded his negative reaction to Falls in his trial notes. Therefore, the State argues, the misuse of the "gut reaction" reason that the courts have warned against is not present here.
The State's reasoning on this point is unpersuasive, and it overemphasizes the post-hoc language of the Avery decision. The thrust of the above-quoted Avery language is that nonspecific "reasons" are generally insufficient because they are inherently untestable; there is simply no way to compare the prosecutor's statement with any objective fact to ascertain whether the prosecutor is truly relying on the reason he articulates. The use of the word "bad" as a reason for striking a black veniremember may mean any number of things; it may embody the constitutionally infirm assumption that the veniremember might favor the defense simply because of his race. See Powers v. Ohio, 499 U.S. 400 at ___, 111 S.Ct. 1364 at 1370, 113 L.Ed.2d 411 at 424 (1991) ("Race cannot be a proxy for determining juror bias or competency."). The mere fact that the prosecutor wrote the word "bad" in his trial notes does not change this fact in any way; this nebulous reason remains as untestable as if the prosecutor had asserted it for the first time in the Batson hearing. Moreover, the Court of Criminal Appeals, in Henderson v. State, 549 So.2d 105 (Ala.Cr.App.1987), dealt with a similar situation and held that Branch had been violated. In Henderson, a black veniremember was struck because of a "gut reaction" and because "the potential juror had been marked unfavorably by an assistant district attorney, but no reason was given for the unfavorable indication." Henderson, 549 So.2d at 108. The present situation is indistinguishable from that in Henderson.
It is well settled that the ruling of the trial court on a Batson hearing is entitled to substantial deference and will not be disturbed on review unless it is "clearly erroneous." Scales v. State, 539 So.2d 1074 (Ala. 1988). However, the failure to articulate a sufficient race-neutral reason for excluding even a single black veniremember may entitle the defendant to a new trial. Harrell v. State, 555 So.2d 263 (Ala.1989). As the foregoing discussion illustrates, the State failed to give a sufficient race-neutral reason for striking veniremember 57. Moreover, the reasons given by the State for striking the other black veniremembers, particularly veniremember 175, are also suspect. Because the State did not rebut Bankhead's prima facie showing of racially discriminatory jury strikes, the judgment must be reversed under the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny.
REVERSED AND REMANDED.
*1149 HORNSBY, C.J., and ALMON,[*] SHORES,[*] ADAMS, STEAGALL and INGRAM, JJ., concur.
HOUSTON, J., dissents.
HOUSTON, Justice (dissenting).
Neither Bankhead nor the victim was black; therefore, I see no racial dimension in this case. Two blacks served on the jury. The state peremptorily struck seven white and eight black veniremembers. The trial judge is in a much better position than an appellate court to decide whether the prosecutor's reasons are a sham. We should reverse only upon finding that the trial court's ruling was clearly erroneous. Because I cannot find that the trial court's ruling was erroneous, much less clearly erroneous, I would affirm; therefore, I respectfully dissent.
NOTES
[1] This is Bankhead's second petition for certiorari review. After Bankhead's conviction was first affirmed by the Court of Criminal Appeals, we granted his first petition because Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)decided while that petition was pendinggave white defendants standing to raise Batson claims upon the striking of black veniremembers. Because Bankhead is white, this Court remanded the case for a Batson hearing. 585 So.2d 112 (Ala.1991). The proceedings described in this opinion followed.
[2] Bankhead has also raised issues concerning the applicability of Batson to gender-based strikes and the State's ability to consider race at all in the jury selection process. This Court refused to extend the Batson principles to peremptory strikes based on gender, in Ex parte Murphy, 596 So.2d 45 (Ala. 1992), cert. denied, ___ U.S.___, 113 S.Ct. 86, 121 L.Ed.2d 49 (1992). Also, a discussion of the latter issue is unnecessary to a resolution of this case; therefore, we decline to address that issue.
[*] Although Justices Almon and Shores did not sit at oral argument, they have studied the record and listened to the tapes of oral argument.