I was almost persuaded to dissent from the holding regarding the defendants' challenge to the plaintiffs' peremptory strike of prospective juror M.H., because of the principle of law that we must give great deference to the finding of the trial judge. However, I must agree that the record in this case compels us to reverse the judgment.
This Court has reviewed other cases in which a party had used all or most of its peremptory challenges to remove members of a particular race from the jury venire. See, Avery v. State, 545 So.2d 123 (Ala.Crim.App. 1988). In Avery, the prosecution used all of its strikes to remove blacks from the jury venire. Because the trial court had not had the guidance of this Court's decision in Ex parte Branch, 526 So.2d 609 (Ala. 1987), the Court of Criminal Appeals initially remanded the case to allow the prosecution to show the trial court, if it could, why it had used its 12 peremptory strikes to remove blacks from the venire, the court noting that no black had served on the jury. A remand in this present case would not be appropriate, because Ex parte Branch and its progeny have clearly established guidelines for trial courts to use when faced with a Batson or Branch challenge. In Avery, on return to the remand, the Court of Criminal Appeals examined the record and concluded, as this Court does today in this present case, that the judgment had to be reversed.[3] *Page 1075 
Although I concur in today's opinion, I must state once again that I believe Batson is consistent with what I understand to be the policy of this State — that jurors should be selected from a list that contains a fair cross-section of the area served by the court and that any form of discrimination against a particular juror on account of race, color, religion, sex, national origin, or economic status is prohibited. I must advance once again, as I have before, a simple solution to most problems that arise when either party claims a Batson violation. In a special concurrence in Ex parte Bruner, 681 So.2d 173 (Ala. 1996), I posed the following question: "Why has Batson caused judges and lawyers so much difficulty and why do members of the Supreme Court of the United States still disagree on what Batson said?" Id. at 186. I then answered the question and set out my personal views on what the law of this State and the law of the United States required in the use of peremptory challenges in the selection of trial juries. I then proposed a solution that I felt would eliminate substantially a result similar to the one that is required here. In Bruner, I wrote:
 "Although I believe Batson problems will subside in the trial courts, I want to state once again what I stated in Huntley v. State, 627 So.2d 1013, 1017-18
(Ala. 1992), in a special concurrence, with the hope that it might help prevent Batson-generated problems:
 "`I have always thought that many Batson problems could be eliminated in both criminal and civil cases by the following procedure:
 "`(1) Requiring prospective jurors, when they are summoned to appear or when they assemble, to fill out a written questionnaire that would provide substantial background information to the parties to use in exercising their peremptory strikes. In addition to a general questionnaire, the parties might have specific questions, because of the particular nature of the case to be tried, that they would want prospective jurors to answer.
 "`(2) Limiting the number of peremptory strikes available by limiting the size of the venire from which the parties begin striking. In a majority of civil and criminal cases, the rules of procedure only require 24 qualified jurors to be on the panel when the parties begin to exercise their peremptory challenges.
 "`(3) Adopting the rule used in Federal courts that prohibits so-called "back striking"; that is, placing 12 qualified prospective jurors in the jury box, and having the parties decide how many of those 12 they separately and severally want to strike. If a prospective juror was not removed from the box by either side, that juror could not be removed later.'"
681 So.2d at 190.
[3] In Avery, the Court of Criminal Appeals, based on the record before it, stated:
 "We have considered the reasons given by the prosecutor for the peremptory striking of all blacks. We conclude that sufficient race-neutral reasons were given for striking black venirepersons number 2, 4, 43, 46, and 74. Number 2 knows the appellant and is about his age, number 4 lives next door to appellant, number 43 is related to appellant, number 46 has difficulty hearing, and number 74 is a defendant in a pending criminal case. As to the remaining venirepersons, number 33, 42, 108, 125, 104, 122, and 118, we are troubled by the reasons given and have grave doubts as to their legitimacy. Venirepersons number 33, 42, 108, and 125 were struck for the same alleged reason, i.e., that his or her demeanor, attitude, and body language indicated a negative attitude toward the prosecutor and the state's case. The reasons given for striking number 104 were that the venireperson is the same age as appellant and that a family with a similar name is under investigation. Number 122 was struck because he has the same last name as defendants in prior cases, and number 118 was struck because he is the same age as appellant.
 "An examination of the voir dire questioning shows a complete lack of meaningful questions directed to the black venirepersons and related to the reasons given for striking them. `A prosecutor's failure to engage black prospective jurors "in more than desultory voir dire, or indeed to ask them any questions at all," before striking them peremptorily, is one factor supporting an inference that the challenge is in fact based on group bias.'" People v. Turner, 42 Cal.3d 711, 726 P.2d 102, 111, 230 Cal.Rptr. 656 (1986). Our supreme court in Ex parte Branch observed that `a lack of questioning to the challenged juror, or a lack of meaningful questions' is a consideration to support the finding that the proffered explanations are a `sham or pretext.' 526 So.2d at 623, 624."
545 So.2d at 126-27.