# Beasley v. The State.

## Indictment for Murder.

1. *Drunkenness, and mental unsoundness, as excuse for crime.* — Although "drunkenness, in itself, is no palliation or excuse for crime" committed while under its influence; yet mental unsoundness, superinduced by excessive drunkenness, and continuing after the intoxication has subsided, may be an excuse.

2. *Charge on effect of evidence.* — A charge, instructing the jury in a criminal case, " that upon the evidence, the defendant was guilty of murder in the first degree, or of nothing," is a charge on the effect of the evidence (Rev. Code, § 2678), and, if given without request of either party, is erroneous.

FROM the Circuit Court of Madison.
Tried before the Hon. W. J. HARALSON.

HOUSTON & PRYOR and L. P. WALKER, for the prisoner.

BEN. GARDNER, Attorney General, for the State.

PETERS, C. J. — The offence charged in this prosecution is thus stated in the indictment : " That before the finding of this indictment, Henry Beasley, unlawfully, and with malice aforethought, killed Joseph Todd, by shooting him with a pistol; against the peace and dignity of the State of Alabama." To this, the accused pleaded " not guilty," and went to trial on this plea by a jury. The verdict of the jury was against him, and he was convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for eleven years. From this judgment of conviction the accused appeals to this court. The only errors complained of are those alleged to be founded on the charges of the court below, which were excepted to, and made a part of the record by bill of exceptions.

The defence set up on the trial was insanity, from the effects of a gun-shot wound in the head, and habitual drunkenness. Murder in the second degree is thus defined in the Code : " Every other homicide " (murder in the first degree excepted), " committed under such circumstances as would have

constituted murder at common law, is murder in the second degree." Rev. Code, § 3653. Blackstone defines murder at common law to be, " when a person *of sound memory and discretion* unlawfully killeth any reasonable creature in being, and under the king's peace, with malice aforethought, express or implied." 4 Bla. Com. [195] ; 3 Inst. 47. This definition, with such change of phraseology as renders it suitable to the institutions and government of this country, is adopted and approved by the courts of the states, and of the government of the United States. Amer. Law of Hom. by Wharton, p. 33 ; Med. Jurisp. by Wharton & Stillé, ed. 1855, p. 664, § 966. This court has declared, that the law of homicide in this State is derived from the common law of England. *Pierson* v. *The State*, 12 Ala. 149. From this it appears that the sanity or insanity of the accused is involved in the very definition of the offence of murder in all its degrees, and is necessarily a fact which influences the determination of the jury upon the question of guilt or innocence. In the case of *The Commonwealth* v. *Rodgers*, 7 Metc. 500, the evidence showed that Rodgers, the accused, stabbed Lincoln, the warden of the prison in which Rodgers was confined, and killed him, without any provocation whatever. The sole defence was the insanity of the prisoner. SHAW, C. J., stated the law of that case in these words : " In order to constitute a crime, a person must have intelligence and capacity enough to have a criminal intent and purpose ; . . . . In order to be responsible, he must have sufficient power of memory to recollect the relation in which he stands to others, and in which others stand to him ; that the act he is doing is contrary to the plain dictates of justice and right, injurious to others, and a violation of the dictates of duty." *S. C.* 1 Lead. Cr. Cas. 87, 89.

In the case at bar, the killing was most clearly proven. There can be no doubt about the perpetration of the criminal act. It was done in a manner the most deliberate and cruel, if the accused was of sound memory and discretion at the time the homicide was committed. Then, the defendant would be clearly guilty as charged in the indictment, if he was of sound memory and discretion at the time Todd was killed by him. To show that the accused was not of sound memory and discretion at the time he committed the fatal act that resulted in the death of Todd, evidence was introduced by the defence, tending to show that the prisoner had shot himself in the head some nineteen years before the trial in the court below, which produced " a depression in the skull, and a compression of the brain ; " that after this wound, which was on the right side of the head, the prisoner had been affected with " partial paralysis in his left arm and left leg," up to the day of the trial, and that the

wound in the head still remained "sensitive to the touch." Evidence was also offered in the defence, which tended to show, that for several years before the killing, the accused was " a great drunkard;" that he was "generally drunk; " his habits were " to drink from a half to one gallon of spirits every night, and large quantities before breakfast, and before dinner, and before supper each day." He " frequently saw sights, such as witches and devils, and imagined that men were after him to kill him." He fancied that " hair grew in the palms of his hands," which he tried to pluck out, and in " his mouth, and was choking him; " and about three weeks before the killing, he had an attack of *delirium tremens.* There was also proof, that, when drunk, he was " a crazy man, wild and furious, and without sense or reason;" and on the Saturday before the killing, which took place on Monday, " he was seeing witches and devils, and was a wild and crazy man." There was evidence also showing that, on Monday, the day of the killing, " he was in like condition," as on the Saturday before. The evidence for the prosecution tended to show that the killing was wholly unprovoked, and perpetrated in the most deliberate and brutal manner; that the accused was not totally deprived of memory and discretion at the time of the commission of the act, which constitutes the offence charged. There was no serious conflict in the testimony, except as to the state of mind of the defendant in the court below at the time of the homicide.

Upon this evidence, the court gave seven charges to the jury, each of which was excepted to by the accused, and incorporated into the record by bill of exceptions. The first of these charges was in these words: " Drunkenness, in itself, was no palliation or excuse." And the fifth charge was in these words: " Upon the evidence, the defendant was guilty of murder in the first degree, or of nothing."

It is said in *Martin* v. *The State* (47 Ala. 564, 573), that " where there is any rebutting proof, the court ought so to charge as to recognize its effect." This is particularly so, when the charge is general, and applies to the whole case. Here, the proof tended to show, not only that the accused was drunk, but when drunk was " a crazy man, wild and furious, and without sense or reason; " that on Saturday before the killing on Monday, " he was seeing witches and devils, and was a wild and crazy man;" and on Monday, the day of the killing, " he was in like condition," as he had been on the Saturday before. The first charge of the court above set out ignores all this evidence of mental unsoundness, and seems to take it for granted that, if it existed, it must necessarily be the immediate effects of the defendant's drunkenness. Such a charge is vicious, because it excludes from the jury all the evidence of

mental unsoundness, which might or might not be a pallia-
tion or excuse for acts which would · otherwise be criminal,
according to the degree and character of the mental unsound-
ness. The *policy* of the law forbids that mere drunkenness
alone should do away with the responsibility for crimes.
Whart. & Stillé Med. Jurisp. p. 50, § 66. But, as all crime
implies some degree of intelligence in the criminal, the *hu-
manity* of the law will not sanction the punishment of a per-
son incapable of rational action. *United States* v. *McGlue*,
1 Curtis C. C. R. 1 ; 1 Lead. Cr. Cas. p. 87, and notes p. 93 ;
*Rodgers's case, supra ;* 1 Rus. Cr. p. 1, 2. Drunkenness may
be said to have two degrees in its effects upon the memory and
discretion. The one of these is mere intoxication. No de-
gree of this will palliate or excuse, where it is the effect of
the voluntary act of the defendant. *The State* v. *Bullock*, 13
Ala. 413.· Blackstone and the older authorities say, that drunk-
enness itself is a crime ; and " the law of England, considering
how easy it is to counterfeit this excuse, and how weak an ex-
cuse it is, though real, will not suffer any man thus to privilege
one crime by another." 4 Bla. Com. p. 25. The other ef-
fect of drunkenness is mental unsoundness, brought on by ex-
cessive drinking, which remains after the intoxication has sub-
sided. This latter mental unsoundness, if it exists to such
excess that the accused loses the government of his reason,
may be interposed as a palliation or excuse for crime. *United
States* v. *Drew*, 1 Lead. Cr. Cas. p. 115, and notes. Here,
there was proof not only of excessive intoxication, but also
some proof of mental unsoundness, which was separable from
mere intoxication. It should, therefore, have been left to the
jury to determine whether there was any mental unsoundness
which was separable from the intoxication ; and if there was,
whether it was sufficient to overthrow the defendant's sense of
right and wrong. The defendant's drunkenness might be
looked to as a means of ·producing this effect. The charge of
the court was calculated to misdirect the jury in making this
inquiry. The evidence of insanity of the accused may have
been regarded by the learned judge in the court below as very
feeble, yet this would not justify a charge, which, in effect,
withdrew it from the jury. *Martin* v. *The State*, 47 A a.
564.

The second charge above quoted, which is numbered the *fifth*
in the bill of exceptions, is erroneous. It is a charge upon the
effect of the evidence, without the request of either party. In
*Edgar* v. *The State* (43 Ala. 312) this was declared to be error.
Besides, the charge is not free from contradiction in itself. It
is very well calculated to confuse and mislead the jury. The
testimony was not wholly free from contradictions. Yet it is

[Pines *v.* State.]

founded on the presumption that there was no such contradiction. Doubtless the learned judge intended to charge the jury, if they believed · from the evidence that the defendant was merely drunk and not insane, when he committed the act of killing, then he was guilty as charged in the indictment, but, if they believed he was so insane as not to know right from wrong, then he was not guilty. This would have been correct.

The unsoundness of mind which excuses a criminal act, must be of such degree as deprives the accused of the capacity to know right from wrong. Short of this, it does not excuse. 1 Rus. Cr. 9, Sharswood's ed., and notes; *Mosler's case,* 4 Barr, 264.

The monstrous barbarity of the act of killing should not be admitted as a presumption of insanity. *Stark's case,* 1 Strob. 479.

The judgment of the court below is reversed, and the cause is remanded for a new trial; and the accused, Henry Beasley, will be held to answer the indictment under which he has been arrested, until discharged by due course of law.