512 So.2d 790 (1987)
Tolbert LEVERT
v.
STATE.
6 Div. 157.
Court of Criminal Appeals of Alabama.
February 10, 1987.
On Return to Remand July 28, 1987.
*791 John C. Rockett and H. Jadd Fawwal, Bessemer, for appellant.
Charles A. Graddick, Atty. Gen., and Beth Slate Poe, Asst. Atty. Gen., for appellee.
TYSON, Judge.
Tolbert Levert was charged in two separate indictments with the unlawful breaking and entering of a motor vehicle, to-wit, a 1976 BMW automobile, with intent to commit a felony therein, to-wit, theft of property contrary to § 13A-8-11 (b) Code of Alabama 1975 as amended and, in a second indictment, with obtaining or exerting unauthorized control over several items of the value of $122.98, the property of one Joyce Kay Feltman, with intent to deprive the owner of said properties, contrary to the provisions of § 13A-8-4, Code of Alabama 1975 as amended.
Thereafter, the two causes were consolidated for trial and, following a jury trial held in circuit court, the appellant was found "guilty of unlawfully breaking and entering a vehicle as charged in the indictment" and in the second indictment with "guilty of the theft of property in the second degree as charged in the indictment".
The cause was then continued for sentencing hearing. At the hearing the appellant admitted three prior felonies. The appellant was then sentenced as a habitual felony offender to 18 years' imprisonment in each case with the two sentences to run concurrently. The appellant then gave notice of appeal.
This entire cause arises from an incident which occurred on the afternoon of July 14, 1984, when one Joyce Kay Feltman drove with her children to the Pizitz Store located at the Midfield Plaza in Jefferson County, Alabama to go in and do some shopping. After placing several items which she had purchased for herself and her children in the vehicle, she then walked to a Pizza Parlor to eat. When she returned to the car she found that the vehicle had been broken into and a sweater, a blouse, shirt, her tape box and several tapes had been removed therefrom. She gave the value of these items in open court.
The appellant testified to an alibi defense stating that he had recently been in the Cooper Green Hospital and had had surgery and had just been released. He stated that he could barely raise his arms. He further stated that he could not have crawled into an automobile.

I
At the trial of this cause and on appeal, the appellant contends that the prosecutor's use of certain peremptory challenges to strike blacks from the jury violated his Sixth and Fourteenth Amendment rights. During the course of choosing the jury prior to trial of this cause, the following occurred: (R. 6-8)
"(Jury not present)
"MR. ROCKETT: I just want the record to reflect that there's been an offer of a minimum sentence in this case, dropping one charge, and I have explained that to my client. He has turned that down.
"The second thing, I would move to dismiss the jury before they get sworn in, Judge. I have already told you about that based on Batson versus Kentucky, U.S. Supreme Court decision, April 30th of this year, being violative of his 6th and 14th Amendments, and not having a jury of his peers, a cross section of the community.
"And if I understand correctly, we have to show a couple of things. Number one, that Tolbert is a black, which is a recognizable racial group, and that all of the prosecutor's challenges removed six potential *792 jurors from the venire with the seventh being a lady that her daughter went to school with me.
"And if I understand, further, that we have to show that he is a member of a recognizable racial group, and that he has been deprived of having some of those potential jurors dismissed solely because of race.
"THE COURT: I tell you what, Gentlemen, the situation that we are in right now, there is nothing I can do about the composition of the jury. So, I'm going to deny your motion, Mr. Rockett, in regard to your challenge under Batson. We will reconstruct the record to reflect the race and sex of the strikes, and both the State and the Defendantwe can do that through the jury venire.
"We can let the record reflect that Mr. Tolbert Levert is a black male. And also we will let the record reflect the racial and the sex make-up of the venire that is actually selected to try this case.
"And, then, Mr. Verin, if at that time I feel it is necessary I will give you an opportunity to justify the strikes that you made. Particularly, one strike made by the State I know was a man that said, whether or not somebody should be punished for what they did would depend on who they were. I think that was Mr. Kenneth E. Ross.
"MR. ROCKETT: I believe that was Robert Lewis, Your Honor.
"THE COURT: We will take that up. We are at the point now there is not much I can do about the composition of this particular jury.
"MR. VERIN: Judge, if we could have the record reflect that there are in fact three black jurors.
"THE COURT: We will let the record reflect both the race and sex of the jurors. Bring in the jury Mr. Burns."
On record pages 88-89 the record reflects the following:
"THE COURT: Gentlemen, I'm going to defer imposition of sentence and adjudication of guilt until I conclude this trial.
"Mr. Rockett, I have made, and if you want to check my notations of the racial composition of the venire, the race of the strikes made by the State and Defendant, and the racial composition of this jury.
"If you want to check my information and stipulate, fine. If not, we can present or provide that for the record in some other fashion. Do you want to take a look at that.
"MR. ROCKETT: Judge, I'm sure you have the same thing.
"(Off the record)
"(Proceedings ended for the day).
The next day the following occurred: (R. 89-92)
"STATE OF ALABAMA "VS CC84-1125 & 1126 "TOLBERT LEVERT
"Bessemer, Alabama, August 19, 1986 (9:50 A.M.)
"SENTENCING
"THE COURT: We are here for the sentencing hearing in regard to this matter.
"At the appropriate time in this trial for lack of a better way to say ityou raised the question in regard to what's been referred to, for lack of a better name, the Batson motion in regard to the use of peremptory challenges by the State of Alabama in regard to their exclusion of prospective jurors in this case.
"I indicated then that I would give you an opportunity to supplement the record to indicate, not only what the racial composition and the sex of what this jury was, but also let the record reflect what strikes were exercisedperemptory strikeswere exercised by the State and by the Defendant in this case.
"And I understand we are going to do that by stipulation. I made notes during the course of the trial. And check and see if these confirm with you gentlemen's records or recollections.
"The twelve people that actually ended up sitting on this jury were made up of four white males, two black males, two black females and four white females. And if my math is correct, about one-third of the venire was made up of members *793 of the black race, and two of the twelve were black males. And the record reflects that the Defendant is also a black male.
"Does that correspond with you gentlemen's recollection?
"MR. ROCKETT: Yes, sir.
"MR. VERIN: Yes, sir.
"THE COURT: My recollection is that the State of Alabama exercised peremptory challenges to excuse Juror 32, a white female, Juror 33, a black male; Juror 46, a black male; Juror number 28, a black female; Juror number 49, a black male; Juror number 56, a black male; and Juror number 59, a black male.
"Peremptory challenges by counsel for the Defendant excused Juror number 43, a white female; Juror 45, a white male; Juror 48, a white male; Juror 53, a white female; Juror 55, a white female; Juror 57, a white male; and Juror 58, a white female.
"To be perfectly frank with you, Gentlemen, it's the opinion of the Court there is no Batson question presented by the end venire in this case or the exercise of the State of Alabama's peremptory strikes, because there was, of course, no exclusion of any racially cognizable, or otherwise group of the venire in this case.
"I will let you be heard on that, John, if you feel like you want to supplement anything in addition to what the record reflects.
"MR. ROCKETT: Yes, sir, Judge. I would like to go over, if I could, all the strikes. Number 49 was a Randy Phillips, a young black male who had a vehicle broken into, and had his house broken into on two different occasions. Tolbert was charged with unauthorized breaking and entering of a vehicle and theft.
"Number 56, Shedrick Cowan, a black male, who had had a vehicle broken into. Number 59, Klement Franklin, was a black male who had a relative who is a police officer.
"Forty-six was a Robert Lewis, a black male, who had had a vehicle broken into, and had his home broken into on three different occasions. Ruth Davis, number 28, was a black female, apparently no prior crimes against her.
"Number 33 was a Michael Hall, a black male, who also knows a police officer. And it's our position they were stricken from the jury because of their race, because they are the same race as the Defendant.
"THE COURT: All right. The Court having found that there is no, for lack of better phrase, the Batson argument complained in this case, I'm going to not require the State to justify every challenge for cause, other than what the Defense Counsel placed on the record.
"I deny your motion to quash the venire, Mr. Rockett, and give you an exception to my ruling."
While this cause was pending in this court, the Supreme Court of the United States rendered its opinion in Batson v. Kentucky, 476 U.S. ___, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In Batson, the court rejected the evidentiary burden which had formerly been placed upon a defendant who asserted an equal protection of law claim with reference to the State's alleged discriminatory use of peremptory challenges under Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The U.S. Supreme Court overruled Swain in this regard and adopted a case by case approach to the proof required to show discriminatory challenges instead of the heavy burden of proving historical data of continued or systematic exclusion of blacks from juries in case after case, whatever the circumstances, whatever the crime and whoever the defendant or victim may be. Batson, supra.
Under date of January 13, 1987 in Griffith v. Kentucky, and Brown v. United States, ___ U.S. ___, 107 S.Ct. 708, 93 L.Ed. 649 (1987) the United States Supreme Court determined that their opinion in Batson should be applied retroactively to all cases pending on original direct appeal as of April 30, 1986, the date of Batson.
This holding in Griffith and Brown, supra is consistent with the U.S. Supreme Court's interpretation of their understanding *794 of the retroactivity of their opinions. Specifically, see Desist v. United States, 394 U.S. 244, 259, 89 S.Ct. 1030, 1039, 22 L.Ed.2d 248 (1969); United States v. Johnson, 457 U.S. 537, at 555, 102 S.Ct. 2579, at 2590, 73 L.Ed.2d 202 (1982); Shea v. Louisiana, 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985).
Moreover, while this cause was pending in this court on original direct review, the Supreme Court of Alabama rendered its opinion in Jackson v. State, 84-1112, December 19, 1986, in which the Alabama Supreme Court determined that the rule of Batson v. Kentucky, supra requires that, as a matter of state law, the prosecution's use of its peremptory strikes be subjected to the same rule of law as is set forth in Batson v. Kentucky. See also, Zachary v. State, 85-757, January 2, 1987, and Owens v. State, No. 85-1008, January 9, 1987.
Under the mandate contained in the opinion of the Supreme Court of the United States in Batson, this court has no alternative but to remand this cause for a hearing with counsel present to represent the appellant and does, hereby, direct the State of Alabama, through its District Attorney, to set forth its reasons in using its peremptory challenges to remove certain black persons from the jury venire in this cause as shown by the record. (Cases cited in this opinion).
A return shall be filed in this court showing the testimony taken in circuit court on this question and the findings of the trial judge, by written order, with reference to the evidence developed in this hearing. Such return shall, together with the trial judge's findings and order, be filed expeditiously in this court following the hearing in circuit court.
REMANDED WITH DIRECTIONS.
All the Judges concur.
TYSON, Judge.

On Return To Remand
On February 10, 1987, this court directed the Circuit Court of Jefferson County, Alabama, Bessemer Division, to conduct an evidentiary hearing as to the prosecutor's use of certain peremptory challenges to strike blacks from the jury in this cause. As directed, the circuit court has complied and filed its return in this court bearing date of June 22, 1987. As further directed, the circuit court did enter its order and judgment-making findings with respect to the peremptory challenges by the district attorney. That order is as follows:
"ORDER

"This case was remanded to the trial court for a `hearing with counsel present to represent the appellant and does hereby direct the State of Alabama, through its district attorney to set forth its reasons in using the peremptory challenges to remove certain black persons from the venire in this cause as shown by the record.' This hearing was held on May 15, 1987.
"While the Remand Order makes it clear that the appellate court finds from the record before them that a prima facie case of purposeful discrimination was shown by the defendant, I feel compelled to address this issue prior to complying with this Order.
"There is no doubt that Tolbert Levert is a black male, a member of a cognizable racial group and it is also undisputed that the State of Alabama's attorney exercised peremptory challenges to remove members of the defendant's race. The question at trial faced by this Court was, did these facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude veniremen from the petit jury on account of their race.
"The question was answered negatively by this Court at trial admittedly for an erroneous reason in light of Fleming v. Kemp, 794 F.2d 1478 [11th Cir.1986].
"Factors that the Court was aware of but did not state in regard to the `Batson question' included the following:
"The record should reflect that the prosecutor in this case was a black male and while it is true that the exercise of peremptory challenge provides the opportunity *795 for those to discriminate, who are of a mind to discriminate, regardless of their race, it was a factor considered by the Court.
"It can be seen from the record in this case that the venire from which the jury was selected was comprised of 27 people, 10 (approximately 37%) of whom were black. Each side excused 7 peremptory challenges leaving a jury of 13, an alternate was selected by a random draw at the close of the case. The racial composition of the jury as selected was 9 white members and 4 black members, approximately 31% of the jury were members of the black race.
"Four of the black members of the venire who were struck had served in a criminal trial over which I presided earlier in the week. The verdict of the jury was in great contrast to the theory of the case presented by the prosecution.
"At the hearing held the prosecutor provided the following reasons for the exercise of his peremptory challenges:
"`I struck juror number 49, Randy Phillips, as I can best recall, the comments that he made concerning his vehicle being stolen. But, the fact that he did not report it struck me, and also the fact of his youth were reasons I think I had primarily in my mind when I struck juror 49, Randy Phillips.'
"`With regard to juror 56, Shedrick Cowin, I believe there was something about that juror's demeanor with regard to their response regarding their vehicle being broken into that just made me feel uneasy. That was the reason for my striking that particular juror.'
"With regard to juror number 59, Klement Franklin, it was not that jurors responses which drew me to his attention, but rather his demeanorhis general demeanor and his reactions to responses of the other jurors which lead me to strike himstrike him.'
"`With regard to the juror number 46, Robert Lewis, the commentwe had a little dialogue concerning the criminal justice system and how it works, and the punishment of those that were guilty.
"`It may have been with regard to a crime he may have been a victim of. I can't recall right off hand. He made a comment that he would leave it up to the Lord to take care ofto be the ultimate judge and the ultimate provider of punishment for criminals. And of course, that comment lead me to strike him.'
"`With regard to juror number 28, Ruth Davis, I believe that she said that her vehicle was broken into and that some money was taken. And to the best of my recollection I believe she was not sure if she could be a fair and impartial juror. I believe those were her words, that she was not sure she could be impartial. That was the reason why I struck her.'
"`And finally juror number 33, Michael Hall. I believe that he made a comment in response to a question that he knew a police officer. And again it was the way he said it and his reaction to the questions about police officers and his demeanor which drawed (sic) my attention to him, and ultimately led me to strike him.'"
"While these reasons are subjective, the Court finds that valid non racial reasons existed for the exercise of peremptory challenges.
"The Circuit Clerk is Ordered to transmit the transcript of Voir Dire and the hearing in regard to this matter, along with this Order, to the Alabama Court of Criminal Appeals.
"DONE and ORDERED this the 17th day of June, 1987.
 /s/ Dan Reynolds
 Senior Circuit Judge
In addition, after the district attorney stated his reasons for striking those jurors, the appellant's counsel was given an opportunity to cross-examine the attorney. The record reflects the following: (R. 7)
"THE COURT: Any questions, Mr. Rockett?

"CROSS EXAMINATION
"EXAMINATION BY MR. ROCKETT:
"Q. Well, yes, sir, Your Honor. I have one question.

*796 "When you first became employed with the district attorney's office and began trying jury cases, were you ever told to strike members of the black race because of their propensity not to give convictions in criminal cases?
"A. Never.
"MR. ROCKETT: That is all I have.
"THE COURT: Mr. Verin, did you usewell, I don't have any questions. The question asked by the Court of Criminal Appeals has been answered. And a copy of this hearing and my order will be prepared.
"I will provide a copy of the hearing and written order and provide you gentlemen a copy of the written order. Thank you.
"(End of hearing)"
This court has carefully examined the above record and finds no infringement of this appellant's constitutional rights through the striking of the prospective jurors from the venire as hereinabove set forth. In our original opinion remanding this cause for an evidentiary hearing, this court did not find that a prima facia case of purposeful discrimination had been shown by the defendant. That determination must be made by the trial court. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986), Griffith v. Kentucky, 477 U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). The remand was required "[b]ecause the trial court flatly rejected the objection without requiring the prosecutor to give an explanation for his action." Batson, 476 U.S. 79, 106 S.Ct. 1712, 1725, 90 L.Ed.2d 69 (1986).
It is readily apparent that a "race neutral" explanation was given as to each of the individual jurors. These reasons range from the relative youth of a prospective juror to the inattentiveness of others and to the age of still others. One reason was with reference to one juror's reaction to police officers.
Based on the trial court's order and judgment and our study of the record, we find no violation of the appellant's constitutional rights in this cause. See Tinsley v. State, 507 So.2d 1004 (Ala.Crim.App.1986). See also Nesbitt v. State, [Ms. 1 Div. 431, June 9, 1987] (Ala.Crim.App.) ___ So.2d ___ (1987).

II
Appellant's counsel also asserts that the trial court erred in overruling his motion to exclude the evidence of value as testified to by the victim in this cause when the items allegedly taken were not produced for inspection by the jury.
In prosecutions for obtaining or exerting unauthorized control of allegedly stolen property or buying, receiving or concealing same, there must be proof of the value of the allegedly stolen items. Booker v. State, 151 Ala. 97, 44 So. 56 (1907); Lang v. State, 23 Ala.App. 576, 129 So. 312 (1930); Padgett v. State, 44 Ala.App. 548, 216 So.2d 187 (1968); Nelson v. State, 56 Ala.App. 209, 320 So.2d 714 (1975). As noted by this court in DeBruce v. State, 461 So.2d 889 (Ala.Crim.App.1984), speaking through Presiding Judge Bowen, we find the following:
"The only predicate necessary for the receipt of opinion testimony of value is that the witness has had an opportunity to form a correct opinion of the value of the stolen property. State v. Johnson, 268 Ala. 11, 13, 104 So.2d 915 (1958); Tice v. State, 386 So.2d 1180, 1186 (Ala. Cr.App.), cert. denied, Ex parte Tice, 386 So.2d 1187 (Ala.1980); Alabama Code 1975, § 12-21-114. For purposes of offenses involving theft, `value' is defined as `(t)he market value of the property at the time and place of the criminal act.' Alabama Code 1975, § 13A-8-1(14)."
In the case at bar there was no objection whatever to the victim's testimony that she had been to the Pizitz Store on the afternoon of July 14, 1984, the date of the alleged theft and testified that she had purchased a sweater, a blouse and a skirt. Her testimony indicated that she had paid "around $20" for the sweater, $15.99 for the blouse and $22.99 for the skirt. (R. 11) Moreover, as to the other items within the car, she stated that she had paid "around $10" for the tape box. (R. 14) and "around $6.00 a piece" for nine tapes, "around *797 $54.00". (R. 15) This was admitted without objection. Thus, there was proper proof of the value of the property over which the appellant was charged with exerting unauthorized control.
Under the authorities herein cited, proper proof of value was submitted to the jury and it was for the jury to determine under the evidence the weight or credibility of the testimony presented. No error is here shown.
The victim, Mrs. Joyce Kay Feltman, was a proper party to present this testimony.
For the reasons herein stated, the same is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.