587 So.2d 1027 (1991)
Manson FISHER, Jr.
v.
STATE.
1 Div. 948.
Court of Criminal Appeals of Alabama.
March 1, 1991.
Rehearing Denied June 14, 1991.
*1029 David Schoen, Montgomery, for appellant.
Don Sigelman, Atty. Gen., and Robin Blevins, Asst. Atty. Gen., for appellee.
McMILLAN, Judge.
Manson Fisher, Jr., was convicted of capital murder, for the murder of three persons by one act or pursuant to one scheme or course of conduct. See § 13A-5-40(a)(10), Code of Alabama 1975. Following a sentencing hearing, the jury returned an advisory sentence of life without parole, and the trial court imposed that sentence.

I
Fisher argues that he was denied equal protection of the law, due process of law, a fair trial, and "various other state and federal constitutional statutory rights" by the prosecutor's alleged systematic and purposeful exclusion of women from the jury. The record indicates that defense counsel objected at trial to the striking of females from the jury, as follows:
"In addition, the State saw fit to strike twelve women out of the eighteen strikes, which on its face, is a systematic exclusion of women from the jury. And the defendant would allege and suggest to the Court that it simply because this is a capital case that may or may not could result in a sentence of death [sic]. And for that reason only those women were struck."
The prosecutor responded by stating that because women are "not a racially cognizable group defined under Batson," the law of that case should not apply. The prosecutor further stated that because the defendant was not female, "even if you extended Batson and applied it," Fisher would not have standing. Thereafter, the trial court overruled the objection to the striking of females.
*1030 Because the objection addressed the prosecutor's peremptory strikes and not the composition of the venire or the method for drawing a venire, the appellant's grounds alleging the denial of a jury composed of a fair cross section of the population, a violation of § 12-16-55, Code of Alabama 1975, and § 12-16-56, Code of Alabama 1975, are waived. See, e.g., Holland v. Illinois, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990).
This court has previously held that the standards of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), do not extend to "gender based" peremptory strikes:
"This court recently addressed this issue in the case of Daniels v. State, [Ms. CR-89-447, September 21, 1990], [581] So.2d [536] (Ala.Cr.App.1990); see also, Stariks v. State, [Ms. CR-89-1113, October 26, 1990], [572] So.2d [1301] (Ala.Cr.App. 1990). In Daniels, we held that Batson does not extend to gender-based peremptory strikes.
"`"Although the Court in Batson relaxed the evidentiary burden of Swain [v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)], it offered no intimation that it was extending the equal protection safeguards involving peremptory strikes to gender: `By requiring trial courts to be sensitive to the racially discriminatory use of peremptory challenges, our decision enforces the mandate of equal protection and furthers the ends of justice.' 106 S.Ct. at 1724 (emphasis added). While the strictures of the Equal Protection Clause undoubtedly apply to prohibit discrimination due to gender in other contexts, there is no evidence to suggest that the Supreme Court would apply normal equal protection principles to the unique situation involving peremptory challenges.
"`"....
"`"Clearly, if the Supreme Court in Batson had desired, it could have abolished the peremptory challenge or prohibited the exercise of the challenges on the basis of race, gender, age or other group classification. A careful examination of the Batson opinion, however, leads this Court to the firm conclusion that, in light of the important position of the peremptory challenge in our jury system, the Court intended Batson to apply to prohibit the exercise of peremptory challenges on the basis of race only."'
"Daniels, [581] So.2d [536,] quoting United States v. Hamilton, 850 F.2d 1038, 1042-43 (4th Cir.1988), cert. dismissed sub nom. Washington v. United States, [489] U.S. [1094], 109 S.Ct. 1564, 103 L.Ed.2d 931 (1989), cert. denied, Hamilton v. United States, [493] U.S. [1069], 110 S.Ct. 1109, 107 L.Ed.2d 1017 (1990). We see no reason to depart from this decision here."
Dysart v. State, 581 So.2d 541 (Ala.Cr.App. 1990).
As to Fisher's claim that he was denied his right to a fair trial due to these strikes, we conclude that he has failed to meet his burden of proof in raising this claim. "The constitutional standards of fairness require that a defendant have `a panel of impartial, "indifferent" jurors.' Irvin v. Dowd, 366 U.S. [717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961) ]." Murphy v. Florida, 421 U.S. 794, 799, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975). Moreover, a defendant has a right to "`a tribunal both impartial and mentally competent to afford a hearing.' Jordan v. Massachusetts, 225 U.S. 167, 176, 32 S.Ct. 651, 652, 56 L.Ed. 1038 (1912)." Tanner v. United States, 483 U.S. 107, 125, 107 S.Ct. 2739, 2750, 97 L.Ed.2d 90 (1987). In determining whether an appellant was denied his right to a fair trial, a court must examine the totality of the circumstances. Dobbert v. Florida, 432 U.S. 282, 303, 97 S.Ct. 2290, 2303, 53 L.Ed.2d 344 (1977). Where a defendant charges that a practice is "so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial[,] if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." Holbrook v. Flynn, 475 U.S. 560, 572, 106 S.Ct. 1340, 1347, 89 *1031 L.Ed.2d 525 (1986). In the present case, the appellant "has directed us to no specific portions of the record, in particular the voir dire examination of the jurors, which would require a finding of constitutional unfairness as to the method of jury selection or as to the character of the jurors actually selected." Dobbert v. Florida, supra, 432 U.S. at 303, 97 S.Ct. at 2303. The jury list contained in the record indicates that seven females served on the jury and that one of the alternates was also a female. The appellant has failed to provide any indication that he was prejudiced by the State's exercise of peremptory strikes against females on the venire.

II
The appellant argues that the trial court erred in denying his motions for expert assistance or for funds to obtain independent expert assistance and, further, by denying him a hearing on this matter. Specifically, the appellant argues that a psychological or psychiatric expert was needed in order to assist him in developing his defense of intoxication and in order to evaluate his mental state.
"It has been repeatedly held by our courts that a denial of funds to pay defense experts for investigations and other assistance does not amount to a deprivation of constitutional rights. Dutton v. State, 434 So.2d 853 (Ala.Cr.App.1983); Thigpen v. State, 372 So.2d 385 (Ala.Cr. App.), cert. denied, 372 So.2d 387 (Ala. 1979), cert. denied, 444 U.S. 1026, 100 S.Ct. 690, 62 L.Ed.2d 660 (1980). We have held that this includes psychiatric specialists. Tillis v. State, 292 Ala. 521, 296 So.2d 892 (1974); Dutton v. State, supra. A defendant has no right to receive a mental examination to determine his sanity at State expense whenever he requests one; absent such a right, the trial court is the proper screening agent as to such. Willis v. State, 441 So.2d 1030 (Ala.Cr.App.1983); Dutton v. State, supra; Allums v. State, 368 So.2d 313 (Ala.Cr.App.1979); Robinson v. State, 337 So.2d 1382 (Ala.Cr.App.1976)."
Nelson v. State, 511 So.2d 225, 237 (Ala.Cr. App.1986), affirmed, 511 So.2d 248 (Ala. 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).
The record indicates that the appellant filed two motions for psychiatric examination, which were denied by the trial court. However, on the same day, the trial court ordered that the appellant be admitted to Taylor Hardin Secure Medical Facility for examination to determine his competency to stand trial. The Lunacy Commission concluded that the appellant had no psychological abnormalities at the time of the crime and, further, that he was competent to stand trial. Thereafter, defense counsel filed a motion to provide funds for expert assistance, alleging that assistance was needed to review the report from the Lunacy Commission, to explain and interpret the report, and to advise counsel as to the appropriateness of the evaluations performed. Defense counsel also indicated that the expert assistance was needed for other reasons. A hearing was held on the matter, and the trial court denied the appellant's motion.
"Although § 15-12-21(d) authorizes payment of court-approved expenses, `"[t]he trial judge must find some reasonable basis for the expenditure of state funds before he may authorize"' payment under the statute, Wiggins v. State, 440 So.2d 1164, 1167 (Ala.Cr.App. 1983) (emphasis added). Once the defendant has been found competent to stand trial and sane at the time of the offense, the trial court's conclusion that there is no "`reasonable basis'" for further state-authorized psychiatric expenses is proper. See Whisenhant v. State, 482 So.2d 1225, 1229 (Ala.Cr.App.1982), aff'd in part and remanded in part, Ex parte Whisenhant, 482 So.2d 1241 (Ala.1983), on remand, Whisenhant v. State, 482 So.2d 1246 (Ala.Cr.App.1983), reversed on other grounds, Ex parte Whisenhant, 482 So.2d 1247 (Ala.1984). "`Common sense, as well as sound legal authority, dictates that the trial judge not grant a psychiatric examination at state expense unless there is some reason to believe the accused was incompetent or insane.'

*1032 Bailey v. State, 421 So.2d 1364, 1367 (Ala.Cr.App.1982)."
Whittle v. State, 518 So.2d 793, 794 (Ala. Cr.App.1987). There is no indication that the trial court erred in determining that there was no reasonable basis for such an expenditure by the State.

III
The appellant argues that his constitutional rights were violated by the trial court's refusal and failure to give appropriate lesser-included offense jury instructions. Specifically, the appellant argues that the evidence presented supported a charge of murder, manslaughter, and criminally negligent homicide. The appellant excepted, at trial, to the court's failure to give a charge on murder, pursuant to § 13A-6-2(a)(1) and (2), Code of Alabama 1975; criminally negligent homicide, pursuant to § 13A-6-4; and manslaughter, pursuant to § 13A-6-3(a)(2).
"[A]n accused is not always entitled to an instruction on a particular offense even though this offense is included in the offense for which he is charged:
"`A person accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. Wiggins v. State, 491 So.2d 1046 (Ala.Cr.App.1986); Chavers v. State, 361 So.2d 1106 (Ala. 1978); Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973). This rule applies regardless of whether the State or defendant offers the evidence. Pruitt v. State, 457 So.2d 456 (Ala.1984). Even if the defendant denies the charge in toto, but the evidence presented by the State suggests a reasonable theory supporting a charge on a lesser offense, the trial court is obliged to give a charge on the lesser offense when requested. Pruitt v. State. A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense or (2) the requested charge would have a tendency to mislead or confuse the jury. Lami v. State, 43 Ala.App. 108, 180 So.2d 279, cert. denied, 278 Ala. 710, 180 So.2d 282 (1965). Every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility. Chavers v. State, supra; Burns v. State, 229 Ala. 68, 155 So. 561 (1934). Section 13A-1-9(b) provides, "The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."
"`"The `safer' practice is to charge upon all degrees of homicide: `[I]t is much the safer rule to charge upon all the degrees of homicide included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree.'" Pierson v. State, 99 Ala. 148, 153, 13 So. 550 (1892), approved in Williams v. State, 251 Ala. 397, 399, 39 So.2d 37 (1948):'
"Phelps v. State, 435 So.2d 158, 163 (Ala.Cr.App.1983)."
"Jones v. State, 514 So.2d 1060, 1063-64 (Ala.Crim.App.), cert. denied, 514 So.2d 1068 (Ala.1987). See also Anderson v. State, 507 So.2d 580 (Ala.Crim.App.1987); Connolly v. State, 500 So.2d 57 (Ala. Crim.App.1985), aff'd, 500 So.2d 68 (Ala. 1986)."
Holladay v. State, 549 So.2d 122, 129 (Ala. Cr.App.1988), affirmed, 549 So.2d 135 (Ala. 1989), cert. denied, 493 U.S. 1012, 110 S.Ct. 575, 107 L.Ed.2d 569 (1989).
Because the evidence showed that the appellant intentionally killed two or more of the victims, a conviction of capital murder was justified and there were no reasonable theories presented to support the requested lesser included offenses. The record indicates that the appellant lived in a trailer with his wife, Angela, and her *1033 mother, Mamie Lee Jones. On the day of the offense, Darryl McClain, Angela's cousin, was visiting in the trailer. Angela told the appellant, while in their bedroom, that she wished to "break up." An argument ensued in which the appellant told her that he did not want to break up and, when she started to leave the bedroom, he picked up his .22 caliber rifle and shot her twice in the back. He then shot Darryl McClain, who was sitting in a chair in the living room. McClain was shot two or three times. Mamie Lee Jones was apparently leaving the kitchen when the appellant shot her. The appellant then went to a neighbor's home and, once inside, stated repeatedly, "Oh my God. Oh my God. It couldn't been no love there [sic]." He told his neighbor to call the police but then refused to say anything. After the police arrived at the scene, the appellant told a police officer to take him away, stating, "I killed those folks in there." The appellant was thereafter taken to the police station, where he was informed of his constitutional rights and where he then gave a statement, admitting that he killed the three victims. He stated that before the crimes occurred, he and a friend (apparently, two friends) had divided $25 worth of cocaine "three ways" and "shot up." He further stated that, thereafter, he and Darryl McClain drank half a pint of whiskey. He also stated that he had consumed five beers that morning. The State presented evidence in the form of testimony from the police officer that took the appellant's statement that he did not appear to be under the influence of drugs or alcohol and that his speech was coherent. The officer further testified that he could not smell any alcohol on the appellant. During the suppression hearing, the appellant testified that on the day he gave the statement he had consumed approximately ten beers and several shots of whiskey and had injected some cocaine into his arms.
The evidence presented would not have supported a charge of intentional murder because intentional murder is "automatically elevated to capital murder when two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct." Holladay v. State, supra, at 130. Moreover, the evidence did not support a charge of murder, pursuant to § 13A-6-2(a)(2) where "[u]nder circumstances manifesting extreme indifference to human life, [one] recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person." The evidence in the instant case clearly indicates that the appellant had a deliberate intent to kill particular individuals; therefore this section does not apply. Phelps v. State, 435 So.2d 158 (Ala.Cr.App.1983); Northington v. State, 413 So.2d 1169 (Ala.Cr.App.1981), cert. quashed, 413 So.2d 1172 (Ala.1982).
The record indicates that the trial court instructed the jury on the lesser included offense of manslaughter by recklessly causing the deaths of the victims. The trial court charged the jury on the definition of recklessness, including a charge that "[a] person who creates a risk but is unaware thereof solely by reason of voluntary intoxication acts recklessly with respect thereto." However, the appellant argues that the trial court erred in failing to charge the jury as to the "heat of passion" aspect of manslaughter. There was no evidence sufficient to support a charge of manslaughter based on heat of passion. Although there was evidence that the appellant and his wife had been arguing when the crimes occurred, because the wife intended to end the relationship, emotional disturbance, no matter how extreme, is not sufficient to reduce murder to manslaughter. Gray v. State, 482 So.2d 1318 (Ala.Cr. App.1985). Moreover, this emotional disturbance does not constitute the type of legal provocation contemplated by the manslaughter statute. § 13A-6-3(a)(2); Biggs v. State, 441 So.2d 989 (Ala.Cr.App.1983). Furthermore, this alleged legal provocation clearly could not encompass the other two victims.
Finally, there was no evidence to support a charge of criminally negligent homicide. The appellant fired a total of six shots into three victims; thus there is no *1034 indication that he was acting out of mere negligence.
Because the evidence supported the appellant's conviction of capital murder and did not reasonably support the requested charges on the lesser included offenses, we find no error in the trial court's refusal to give these charges. Anderson v. State, 507 So.2d 580 (Ala.Cr.App.1987).

IV
The appellant argues that the trial court erred in its jury instruction concerning intoxication. Specifically, the appellant argues that the trial court erred by failing to include "drugs" in its definition of intoxication and by referring to the state of intoxication as "drunkenness".
The appellant argues that the definition of intoxication is not limited to alcohol, but also includes drugs, citing § 13A-3-2(e), Code of Alabama 1975. The record indicates that the trial court read § 13A-3-2(e)(1) to the jury in its oral charge. Thus, the court charged the jury that "[i]ntoxication includes a disturbance of mental or physical capacities resulting from the introduction of any substance into the body." Thus, the trial court's charge "substantially and fairly" covered the appellant's requested charge, Lee v. State, 562 So.2d 657 (Ala.Cr.App.1989), and the appellant suffered no prejudice as a result of the charge.
Furthermore, "drunkenness" is a proper synonym for intoxication. See, e.g., Beasley v. State, 50 Ala. 149, 152 (1873); Hooks v. State, 534 So.2d 329, 352 (Ala.Cr.App. 1987), affirmed, 534 So.2d 371 (Ala.1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989).

V
Appellant argues that Alabama's system of legal assistance for indigent defendants in capital cases violated the appellant's rights to effective assistance of counsel, due process of law, and equal protection of the laws, and violated the prohibition against cruel and unusual punishment. Specifically, the appellant argues that "[b]ecause of the unreasonably low hourly fees and inflexible caps on legal fees, Alabama's indigent defense system in capital cases has discouraged appointed counsel "from investing time and resources in meeting with indigent criminal defendants and researching the underlying issues in their case." The appellant refers to § 15-12-21(d), Code of Alabama 1975, which states that compensation for appointed counsel's trial preparation is limited to $1,000, at a rate of $20 an hour. The record contains no request by appellant or his counsel for additional fees, nor were any claims made concerning the constitutionality of this statute. Therefore, this matter is waived on appeal. Calhoun v. State, 530 So.2d 259 (Ala.Cr.App.1988).

VI
The appellant argues that the trial court erred by failing to strike for cause certain prospective jurors, based on their relationships with the victims, witnesses, and prosecutors at trial. None of the reasons pointed out by the appellant, which allegedly should have caused the prospective jurors to be struck for cause, falls within the statutory grounds stated in § 12-16-150, Code of Alabama 1975. While these grounds are not exclusive, a nonstatutory ground should be a matter which indicates probable prejudice, Ex parte Cochran, 500 So.2d 1179 (Ala.1985) or indicates that "a prospective juror's opinion or bias is so fixed that he or she could not ignore it and try the case fairly and impartially according to the law and the evidence." Ex parte Rutledge, 523 So.2d 1118, 1120 (Ala.1988).
In his brief on appeal, the appellant lists the following alleged particulars concerning veniremembers, which he submits should have led to their being struck for cause by the trial court:
"1. Potential juror Dearmon worked with victim Darryl McClain and discussed the case for about a week on the job. (R-95, 130-132.)
"2. Trial juror Davidson saw things about the case on television and in the newspaper. (R-96.) He campaigned with the District Attorney who was trying the case for the state, he served on a *1035 board with and consequently knew the Assistant District Attorney who tried the case, and he knew the members of the Assistant District Attorney's firm. (R-117-118.)
"3. Potential jurors Orso (R-114), Reynolds (R-230, 243), Mitchell (R-243), Stryker (R-244), anonymous juror (R-344), Ryland (R-344), Taylor (Trial juror Edmund Taylor? R-344), and anonymous juror (R-177) all had been represented in a personal matter by one of the trial prosecutors in their capacities as private attorneys.
"4. Several other potential jurors were related to, worked with, or knew `very well' the victims or witnesses for the State. [R-339; 340, 171-173Knew two victims all their lives and taught at least one of them; 174Second cousin of victim; 339First cousin of witness; 121Knew practically all of State's witnesses well; 123Friends with police officer witness; 127Two jurors related by marriage to law enforcement witnesses; 146, 174Second or third cousin of victim; 148Juror's brother had a child with victim; 226Knew all victims and families `real well' from church, etc., and related to State's witnesses (R-231); 181Second cousin to witness; 308Juror went to crime scene just after the crime.]
"5. One juror, Mr. Moore who apparently sat on the third jury (see R-370, actually answered on voir dire that knowing the State's witnesses would affect his deliberations (R-129) and he was not struck. A prospective juror answered that she did not know if what she had heard would affect her (R-311) and she was not struck for cause."
However, the appellant failed to make any challenges for cause to any potential jurors, including those which he now cites in his brief. Moreover, the appellant announced that he was satisfied with the selected petit jury. "The failure to make a timely objection waives the right to question the jury's qualifications." Tate v. State, 417 So.2d 608 (Ala.Cr.App.1982).
"`If counsel is to question or object to the jury venire, he must do so prior to the empaneling and swearing in of the jury. Failure to make a timely objection waives the right to question the jury's qualifications, and appellant may not complain for the first time on motion for new trial nor on appeal to this court. Douglas v. State, 50 Ala.App. 602, 281 So.2d 652 (1973); Yancey v. State, 56 Ala.App. 577, 324 So.2d 292 (1975); Hurley v. State, Ala.Cr.App., 341 So.2d 494 (1976), cert. denied, Ala., 341 So.2d 497.'"
Durden v. State, 394 So.2d 967, 975 (Ala. Cr.App.1980), cert. quashed, 394 So.2d 977 (Ala.1981). See also Rogers v. State, 365 So.2d 322, 331 (Ala.Cr.App.), cert. denied, 365 So.2d 334 (Ala.1978).
In the present case, all of the cited testimony to which the appellant now objects was brought out during the voir dire examination of these potential jurors and, therefore, the appellant was aware of these statements before the jury was empaneled. "Counsel with knowledge of a disqualification of a juror may not remain silent and gamble on a favorable verdict and if unfavorable, raise the matter in a motion for new trial." Daniels v. State, 49 Ala.App. 654, 275 So.2d 169, 172-73 (1973).
As to the juror which the appellant notes apparently sat on the trial jury, the record indicates that the veniremember's final answer to the question of whether her acquaintance with several witnesses would affect her deliberation was "yes." However, it appears that neither party understood this response and neither party raised an objection to the juror or requested further questioning. "Probable prejudice for any reason disqualifies a prospective juror. Grandquest v. Williams, 273 Ala. 140, 135 So.2d 391 (1961). The trial court has a duty to ascertain whether jurors called for trial are subject to disqualification. Folkes v. State, 17 Ala.App. 119, 82 So. 567 (1919); Alabama Code (1975), Section 12-16-150." Howell v. City of Birmingham, 383 So.2d 567, 569 (Ala.Cr. App.), cert. denied, 383 So.2d 570 (Ala. 1980), cert. denied, 449 U.S. 937, 101 S.Ct. 336, 66 L.Ed.2d 160 (1980).
"Where a defendant challenges a petit juror after a verdict, the initial inquiry is *1036 whether the disqualification was a ground for the juror being mandatorily excused as a petit juror, and, secondly, whether the defendant exercised due diligence to keep the unqualified venireman off the jury. Beasley v. State, 39 Ala. App. 182, 185, 96 So.2d 693 (1957).
"....
"Since an accused may waive a statutory challenge for cause, Batson v. State, 216 Ala. 275, 113 So. 300 (1927), in order to avail himself of the alleged error, the defendant must show himself free from fault or negligence in discovering the juror's disqualification. Included in this is the issue of whether or not the silence of the juror deceived the defendant."
Lollar v. State, 422 So.2d 809, 811 (Ala.Cr. App.1982).
The statement by the potential juror is not one of the enumerated challenges for cause set out in § 12-16-150, Code of Alabama 1975, and therefore is not mandatory. Moreover, the appellant has not shown himself free from fault or negligence in discovering this juror's disqualification. He was present when she made the statement, and he failed to object.
Therefore, we find no abuse of discretion by the trial court in failing to strike for cause any of the potential jurors the defendant now objects to.

VII
The appellant argues that he was denied equal protection of the law, due process of the law, a fair trial, and other "state and federal constitutional and statutory rights," by the prosecutor's use of peremptory challenges in a racially discriminatory manner. The record indicates that the appellant objected "upon the grounds that the State systematically excluded or struck members of the jury purely because of their race." The objection was treated as having been made pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Although the appellant now objects on the grounds that he was denied his rights to a fair cross section under the Sixth Amendment, the United States Supreme Court has held that the exclusion of a cognizable group by the exercise of peremptory challenges is not a violation of this right, because the right does not extend to the petit jury. Holland v. Illinois, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990).
The record indicates that the prosecutor used four of his eighteen peremptory strikes against black prospective jurors. The appellant used five peremptory strikes against black veniremembers, and one black served on the jury. The trial court ruled that it was "not sure that the facts in this case rise to the standards set out in Branch." However the trial judge required the prosecutor to give race-neutral reasons for his strikes. Currin v. State, 535 So.2d 221 (Ala.Cr.App.), cert. denied, 535 So.2d 225 (Ala.1988). As to the first strike, the prosecutor stated that the potential juror clearly indicated that he was biased and did not feel that he could set aside his bias if the defendant was convicted of a capital offense. Moreover, the prosecutor stated that the victim's family had informed him, prior to the veniremember's acknowledging it, that he was a minister. The victim's family knew the veniremember and indicated that he would not vote to convict the appellant in any event, and that they did not like him. The trial court noted that the State had sought to challenge this veniremember for cause based on his feelings toward capital punishment and stated, "Although the Court ruled it was not grounds for challenge, certainly [it] should be sufficient that the State would use one of its strikes, and it would not be a strike based on race and be a race-neutral reason; I will allow that strike." Thus, the prosecutor gave a race-neutral and reasonable explanation for the use of this peremptory strike.
"That a veniremember has reservations about the death penalty, though not sufficient for a challenge for cause, may constitute a race-neutral and reasonable explanation for the exercise of a peremptory strike. Smith v. State, 531 So.2d 1245, 1247-48 (Ala.Cr.App.1987) (`was opposed to capital punishment, had problems with sitting in judgment of others'); Levert v. State, 512 So.2d 790, 795-96 *1037 (Ala.Cr.App.1987) (`would leave it up to the Lord to take care ofto be the ultimate judge and ultimate provider of punishment for criminals').
"The fact that a veniremember is a preacher, pastor, or a minister may constitute a sufficient reason. Lockett v. State, 517 So.2d 1346, 1351 (Miss.1987). See also Currin v. State, 535 So.2d 221, 224 (Ala.Cr.App.), cert. denied, 535 So.2d 225 (Ala.1988)."
Warner v. State, [Ms. 3 Div. 945, February 23, 1990], 1990 WL 44302 (1990).
As to the prosecutor's second strike against a black veniremember, he stated that his reason for the peremptory strike was that the potential juror had children who were approximately the same age as the appellant, the appellant having been 26 years of age at the time of the offense and the potential juror's children being 23, 24, and 25 years of age. The "main reason" given by the prosecutor for striking this potential juror was that he indicated that he would have a hard time standing in judgment of his fellow man; and he was the only person out of over 60 people to stand up and indicate such a problem. The prosecutor further noted that he struck other potential jury members because they had children approximately the same age as the appellant; specifically, he said he had struck two white males and two white females for that reason. The prosecutor stated that the prosecution intended to strike two other males because they had children the same age, but that the appellant struck them first. The reasons given by the prosecutor as to this veniremember were sufficiently race-neutral. See Smith v. State, 531 So.2d 1245, 1247-48 (Ala.Cr. App.1987) (wherein potential juror who had problems sitting in judgment of others was properly struck). See also Levert v. State, 512 So.2d 790, 795-96 (Ala.Cr.App.1987). Moreover, the prosecutor's strikes against white veniremembers based on the same reason as that for striking the black indicates that the reason was properly race-neutral. See Singleton v. State, 553 So.2d 689 (Ala.Cr.App.1989).
The third black veniremember was struck, according to the prosecutor, because she had a son who was approximately the same age as the appellant. Moreover, the prosecutor struck this potential juror because she was a woman. He stated, "It's been my experience women are not good jurors in capital cases, having tried capital cases. They feel more sympathetic than men. They go in there and feel like a mother. Because of her being a womanand they brought out we struck out twelve other women, only two of which were black." Therefore, this strike was race-neutral as ten white potential jurors were struck for the same reason. Singleton v. State, supra.
The last peremptory strike used against a black veniremember was also used against a black female on the basis of her gender and because the potential juror had a brother who had "served time". Therefore, this veniremember was also struck for sufficiently race-neutral reasons. See Allen v. State, 555 So.2d 1185 (Ala.Cr. App.1989); Green v. State, 571 So.2d 356 (Ala.Cr.App.1990) Holton v. State, [Ms. CR-89-1114, November 30, 1990], 1990 WL 237230 (Ala.Cr.App.1990).
"In reviewing the trial court's finding that the strikes were non-discriminatory, we can only reverse if we find that determination to be clearly erroneous." Williams v. State, 548 So.2d 501, 504 (Ala.Cr.App. 1988). "[W]e are convinced that the trial judges in our system are in a much better position than appellate judges to decide whether the truth has been stated." Scales v. State, 539 So.2d 1074, 1075 (Ala. 1988). We find that the trial court's decision that the reasons given by the prosecutor were sufficiently race-neutral was not clearly erroneous.

VIII
The appellant argues that he was denied his right to effective assistance of counsel at trial, pursuant to a "totality of the circumstances" analysis. The appellant makes no specific showing of ineffectiveness, nor does he make any specific allegations. Rather, the appellant states that he is raising this matter on direct appeal in order to guard against procedural default. The appellant states in his brief that he *1038 raises this issue "on direct appeal because Appellee [the State] has often argued procedural default for failure of appellate counsel to raise such claims on direct appeal." However, the appellant suggests that this matter would more properly be raised after an evidentiary hearing in front of the trial court.
Because the matter of the effectiveness of the appellant's trial counsel has not been presented to the trial court, there is nothing for this court to review. Perry v. State, 586 So.2d 236 (Ala.Cr.App.1990); Kelley v. State, 568 So.2d 405 (Ala.Cr.App. 1990); Bowens v. State, 570 So.2d 844 (Ala. Cr.App.1990).

IX
The appellant argues that the cumulative effect of a number of errors by the trial court resulted in a violation of his constitutional rights pursuant to the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and pursuant to Article I of the Declaration of Rights of the Alabama Constitution of 1901. Specifically, the appellant argues that, because the trial court conducted a colloquy with the appellant and heard his admission of guilt and desire to plead guilty, when the appellant initially planned to plead guilty, the trial judge should have recused himself. The appellant submits that, "at a minimum," the case should have been transferred to another judge. The appellant also cites as error the trial court's decision to admit his statements made to a police officer immediately after the crime and the trial court's decision to admit the appellant's subsequent confession given at the police station, without charging the jury concerning the voluntariness of the confession. The appellant also cites as error statements made by the prosecutor in closing argument, specifically an alleged reference to the appellant's unemployment and to his failing to take care of his family; an alleged statement to the jury that it could not consider the appellant's intoxication; and certain "impermissible and unduly prejudicial references to the victims."
The record indicates that the appellant failed to request the trial judge to recuse himself, or in any way to raise the issue of the alleged partiality of the trial court; therefore this matter is waived. See Singleton v. State, 553 So.2d 689 (Ala.Cr.App. 1989). Similarly, the appellant failed to object to any of the prosecutor's alleged improper statements or references during closing argument; therefore this matter is waived. Justo v. State, 568 So.2d 312 (Ala. Cr.App.1990).
The appellant's statement made to the police officer was properly admitted, as the police officer did not question the appellant but merely asked, "What is going on here?" The appellant spontaneously stated, "I killed those people in there" and "[t]ake me away from here." St. John v. State, 523 So.2d 521, 525 (Ala.Cr.App.1987) (wherein defendant's statements that "you're not going to have any trouble out of me," and "that's not what I shot at them with," made to a deputy who approached the appellant in the front yard, ordering him to put his hands up, was admissible as a spontaneous statement). See also Smith v. State, 515 So.2d 149, 152 (Ala.Cr.App. 1987) (the procedural safeguards of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), do not apply to traditional investigatory functions, such as general on-the-scene questioning, but apply only when the suspect's statements are given in answer to custodial interrogation).
Moreover, the appellant's confession was properly admitted into evidence. The officer who took the appellant's confession testified that, based on his experience, he did not believe that the appellant was under the influence when he gave his statement; he did not smell alcohol on the appellant's breath; and the appellant's speech was coherent. Where evidence of the voluntariness of a statement is conflicting, great weight must be given to the trial court's judgment. Wilson v. State, 571 So.2d 1266 (Ala.Cr.App.1989); Justo v. State, supra. Furthermore, the appellant failed to adequately object to the trial court's failure to charge on the jury's role in determining the voluntariness of the statement. Rule 14, Alabama Temporary Rules of Criminal Procedure.
*1039 Because we find no error in the specific instances alleged by the appellant, we find no cumulative error. "Where no single instance of alleged improper conduct constituted reversible error, we do not consider their cumulative effect to be any greater. Sprinkle v. State, 368 So.2d 554, writ quashed, Ala., 368 So.2d 565 (1978)." Thomas v. State, 393 So.2d 504, 509 (Ala. Cr.App.1981).
AFFIRMED.
All the Judges concur except BOWEN, J., who concurs specially with opinion.
BOWEN, Judge, concurring specially.
I concur only in the result reached by the majority in Part I of its opinion holding that the standards of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), do not extend to "gender based" peremptory strikes and that the prosecutor's arbitrary use of peremptory strikes against female venirepersons is not unconstitutional. My concurrence is not because I agree with the majority's holding but because a dissent is a futile gesture. In Ex parte Bankhead, 585 So.2d 112, (Ala.1991), a majority of the Alabama Supreme Court held that "the defendant's group identity must correlate with the identity of the group excluded from the jury in order to establish an equal protection claim."[*] Under Bankhead, Fisher, who is a male, has no standing to object to the prosecutor's arbitrary use of his peremptory strikes against females in the selection of the jury.
NOTES
[*] [Reporter of Decisions' note: This quotation appeared in the Supreme Court's Bankhead opinion issued on February 15, 1991. However, that opinion was withdrawn and a new Bankhead opinion was issued on May 24, 1991. That May 24, 1991, opinion did not include this quoted statement.]